439 A.2d 1140

**COMMONWEALTH of Pennsylvania**

v.

**William Kern HALLOWELL, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1980.

Decided July 8, 1981.

204

Mead S. Spurio, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## ORDER

PER CURIAM:

The Court being equally divided, the Order is affirmed.

NIX, J., filed an Opinion in Support of Affirmance.

LARSEN and KAUFFMAN, JJ., filed an Opinion in Support of Affirmance.

O'BRIEN, C. J., filed an Opinion in Support of Reversal in which ROBERTS and FLAHERTY, JJ., join.

ROBERTS, J., filed an Opinion in Support of Reversal in which O'BRIEN, C. J., and FLAHERTY, J., join.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

Because of the error committed in the first trial, appellant has been awarded a new trial. The error was not of the nature that would taint a retrial, thus the award of a new trial is an adequate remedy. I therefore find no basis for barring retrial and immunizing this appellant from a fair trial on the charges for which he stands accused. *See Commonwealth v. Hoskins*, 494 Pa. 600, 432 A.2d 149 (1980), (Nix, J. Opinion in Support of Affirmance, 1981); *Commonwealth v. Starks*, 490 Pa. 336, 345, 416 A.2d 498, 501 (1980) (Dissenting Opinion, Nix, J.); *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978).

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN and KAUFFMAN, Justices.

Appellant, William Kern Hallowell, was convicted by a jury in April of 1974 of murder of the first degree and robbery. The victim was his mother. After denial of his post-verdict motions, appellant was sentenced to life imprisonment for the murder conviction and ten-to-twenty years, consecutive, for the robbery conviction.

On direct appeal, this Court granted appellant a new trial due to prosecutorial misconduct. *Commonwealth v. Hallowell*, 477 Pa. 232, 383 A.2d 909 (1978). Prior to the reprosecution, appellant moved to dismiss the charges against him, asserting that the retrial would violate double jeopardy principles. The motion was denied by the Court of Common Pleas of Philadelphia County on December 11, 1978. Appellant then brought this interlocutory appeal to this Court pursuant to *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977).

In the previous appeal before this Court, appellant raised numerous contentions of error, including several varieties of prosecutorial misconduct. He asserted that he had been deprived of a fair trial, and he asked this Court to remedy that unfairness by granting him a new trial. He *did not ask*

*for* a discharge on double jeopardy, or any other, grounds. We did all that was asked of us. We reviewed the voluminous notes of testimony (which filled several boxes) and all of the many pleadings and other documents, gave full consideration to all of the legal and factual issues presented by all the briefs (including a mammoth *pro se* brief of appellant), concluded that appellant had, indeed, been deprived of a fair trial and, finally, we granted appellant *exactly the relief he expressly requested—a new trial* !

Having received the sole relief he requested, appellant belatedly has decided he wants something else, and is again before this Court armed with the exact same allegations of prosecutorial misconduct. He now asks us to re-examine those allegations, to reengage the appellate judicial machinery, and to expend another sizeable chunk of judicial resources in his behalf, in order to grant him relief *which he failed to request in January of 1978.* We would refuse to indulge appellant's disregard for the Commonwealth's resources and would, accordingly, hold that appellant's request for the specific relief of *a new trial,* which relief was granted, constitutes a waiver of any other relief he could have sought in 1978.

As this Court has frequently held, a litigant who seeks and receives specific relief for a given error cannot seek additional relief at a later time. *See, e. g., Commonwealth v. Hoskins,* 485 Pa. 542, 554 n. 12, 403 A.2d 521, 526 n. 12 (1979) ("since [appellant] failed to do anything more than object and request the striking of testimony in some instances, he received all the relief requested and cannot now seek further relief."), *and Commonwealth v. Hill,* 479 Pa. 346, 388 A.2d 689 (1978).

*Commonwealth v. Bartolumucci,* 468 Pa. 338, 362 A.2d 234 (1976) is not inconsistent with this opinion. In *Bartolomucci,* counsel for defendant had asked the trial court to give additional instructions to the jury which had been deliberating for some eleven hours. The trial court denied this request. Shortly thereafter, the jury was recalled to the courtroom and the judge *sua sponte* declared a mistrial and

discharged the jury. When the Commonwealth brought Bartolomucci to trial again, he asserted a double jeopardy claim on the grounds that the jury should not have been discharged absent a determination that it was hopelessly deadlocked and that mistrial was therefore "manifestly necessary". The Commonwealth responded that the double jeopardy claim was waived because Bartolomucci did not state those specific grounds for objection at trial, but instead had requested additional instructions. The Court held that counsel's "mere silence" following the lower court's *sua sponte* declaration of mistrial did not amount to the request or consent to mistrial which would have been necessary to find a waiver of the objection.

Unlike *Bartolomucci*, we are faced with much more than *mere silence* and passive waiver. On the very same facts that are now before us, appellant vigorously sought a particular type of relief in 1978. The granting of that specific relief exclusively requested by appellant precludes him from returning to this forum to seek additional, different relief. *See also Commonwealth v. Bryant*, 461 Pa. 309, 336 A.2d 300 (1975).

For the foregoing reasons, we would affirm the order of the lower court denying appellant's motion to dismiss.[1]

1. The opinion in support of reversal quotes one sentence from this Court's opinion granting Hallowell a new trial, to-wit: "Upon analysis of the records, we find that Way perjured himself; we find that the testimony of the former chief of homicide was misleading; and we find that the district attorney's office was guilty of perpetrating a falsehood and fraud upon the court, jury and people of this Commonwealth . . . ." Despite this quotation, it is absolutely clear from reading the entire opinion that there was a finding of neither "intent to provoke a mistrial" nor "bad-faith conduct intended to harass or prejudice" Hallowell. The thrust of the opinion was "constructive knowledge"; that is, knowledge (of promises of leniency) of one assistant district attorney was imputed to the prosecutor at trial. It was the "prosecutor's office as an entity" concept which provided the basis for our decision, *not* a finding of actual misrepresentation or bad faith. Thus, the prosecutorial misconduct set forth in the opinion in support of affirmance does not rise to the level of prosecutorial "overreaching" warranting a discharge. However, because appellant is, in our view, estopped from seeking discharge, we would not reach the merits of the double jeopardy issue.

## OPINION IN SUPPORT OF REVERSAL

O'BRIEN, Chief Justice.

This interlocutory [1] pre-trial appeal is from an order of the Court of Common Pleas, Philadelphia, which denied a motion by appellant, William Kern Hallowell, to dismiss informations charging appellant with murder and robbery.

In April of 1974, appellant was convicted by a jury of murder in the first degree and robbery. Post-verdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction with a consecutive ten-to-twenty year prison term for the robbery conviction. On appeal, the Supreme Court, in an opinion authored by Mr. Justice Larsen, granted appellant a new trial because of prosecutorial misconduct. *Commonwealth v. Hallowell*, 477 Pa. 232, 383 A.2d 909 (1978). On remand, appellant moved to dismiss both informations, arguing that retrial would violate the double jeopardy clause of the United States Constitution. Appellant's motion was denied and this appeal followed.

The facts are as follows. At appellant's trial, the main Commonwealth witness was one Charles Way, a co-defendant of appellant. Way testified that he had been with appellant when appellant had beaten his mother with a hammer, killing her, and that appellant had removed some credit cards from her purse.

On cross-examination, Way was asked if he had been promised any leniency by the Commonwealth in return for his testimony. Way denied that he had been promised any leniency. The defense then called Edward Rendell, Esquire, who until six weeks prior to appellant's trial had been chief of the homicide unit in the Philadelphia District Attorney's office. Rendell testified that as chief of homicide, he alone could offer leniency to Way. Rendell stated that neither he nor any of his subordinates had offered any leniency. Rendell did testify that he had recommended reduced bail for

1. This appeal is allowed by our decision in *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977).

Way so that he might remain out of jail until he testified at appellant's trial.

Almost twenty months later, Way appeared in court for a sentencing hearing following his plea of guilty to murder of the second degree. Way testified that before he gave any statement to the police, the Commonwealth had promised to recommend a lesser sentence in return for Way's cooperation in the prosecution of appellant. Way also testified that Rendell had promised leniency in exchange for his testimony. Representatives of the District Attorney's office confirmed that a plea had been negotiated whereby Way would plead guilty to murder of the second degree and the Commonwealth would recommend a sentence of two-to-eight years; all, of course, was contingent upon Way testifying at appellant's trial.

As we stated on appellant's original appeal:

"Upon analysis of the records, we find that Way perjured himself; we find that the testimony of the former chief of homicide was misleading; and we find that the district attorney's office was guilty of perpetrating a falsehood and fraud upon the court, jury and people of this Commonwealth...." *Commonwealth v. Hallowell, supra,* 477 Pa. at 236, 383 A.2d at 911.

Appellant argues that the conduct exhibited by members of the Philadelphia District Attorney's office was of such a grievous nature as to bar retrial. In *Commonwealth v. Starks,* 490 Pa. 336, 340, 416 A.2d 498, 500 (1980), we stated:

"The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. See *United States v. Dinitz,* supra [424 U.S. 600] at 611, 96 S.Ct. [1075] at 1081 [47 L.Ed.2d 267]. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. See *Lee v. United States,*

*supra* [432 U.S. 23] at 32, 97 S.Ct. [2141] at 2147 [53 L.Ed.2d 80]; *United States v. Dinitz*, *supra* [424 U.S.] at 611, 96 S.Ct. at 1081–82. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. *It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.*

"This Court has expressly announced that in 'advocating the cause for this Commonwealth, prosecutors are to seek justice, not only convictions.' *Commonwealth v. Cherry*, 474 Pa. 295, 301, 378 A.2d 800, 803 (1977) (citations omitted). Indeed, a prosecutor

" 'is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a particular and very definite sense the servant of the law. . . .'

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)." (Emphasis added).

I believe the conduct in the instant case must be classified as overreaching, because allowing the use of perjured testimony clearly "signals the breakdown of the integrity of the judicial proceeding." Any prosecutor who would knowingly allow the use of false testimony could in no way be said to be primarily interested that justice be done.

It has long been the law that a conviction based on the government's knowing use of perjured testimony violates due process. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Commonwealth v. Carpenter*, 472 Pa. 510, 372 A.2d 806 (1977). On appellant's original appeal, the Commonwealth argued that appellant's conviction should have been affirmed because the Assistant District Attorney who tried the case had no actual knowledge that Way had

committed perjury. We rejected this contention, quoting *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), where the court stated:

"[W]hether the nondisclosure was the result of negligence or design, it is the responsibility of the prosecutor. *The prosecutor's office is an entity* and as such it is the spokesman for the government. A promise made by one attorney must be attributed, for these purposes, to the government." (Emphasis added).

The Commonwealth makes similar arguments in the instant appeal. At one point, they attempt to classify the misconduct as a mere administrative error. They further cite *Commonwealth v. Moehring*, 445 Pa. 400, 285 A.2d 487 (1971) where we granted a new trial where the prosecutor had knowingly used perjured testimony. The Commonwealth thus argues that a new trial is all that is required where at most, in the Commonwealth's view, appellant has only shown that the trial prosecutor and Mr. Rendell were ignorant of promises of leniency made by Rendell's successor as chief of homicide, Joseph McLaughlin, Esquire. I cannot in good conscience, however, accept the Commonwealth's characterizations of the problem for a number of reasons.

It is quite possible that the trial attorney and Mr. Rendell had no knowledge of the promises of leniency made to Way in exchange for his testimony; even assuming the foregoing to be true, I believe, on the instant facts, that retrial cannot be allowed. Just as we held on appellant's original appeal that promises made by one member of the prosecutor's office must be attributed to all members, the bad faith and overreaching which I believe present instantly on the part of the attorney promising leniency is sufficient to prevent retrial. See *Giglio v. United States, supra.*

The facts of the instant case, quite simply, render implausible the explanations set forth by the Commonwealth. The Commonwealth goes to great lengths in its brief to inform this Court about appellant's past criminal history. Appel-

lant was convicted twice of first degree murder in 1947 for shooting two Philadelphia policemen. In 1971, this Court reversed both convictions and granted appellant a new trial because an involuntary confession had been used to secure both convictions. *Commonwealth v. Hallowell*, 444 Pa. 221, 282 A.2d 327 (1971). Although the record is unclear as to whether appellant was ever retried, appellant was implicated in the instant case less than two years later. It thus defies reason to write off the instant misconduct as an administrative error, for whoever promised leniency to Way in return for his testimony had to have known, because of the sensational aspects of the trial, that Way had perjured himself during appellant's trial, yet that individual never came forward to correct Way's testimony.

I further believe *Commonwealth v. Moehring, supra,* is of no help to the position advanced by the Commonwealth. There, the question of whether the intentional use of perjured testimony should bar retrial was not before the court. Further, neither was the question before this court when we reversed appellant's convictions for killing and robbing his mother.[2] Thus, in both instances, our grant of a new trial is of no moment to the instant double jeopardy analysis.

In its brief, the Commonwealth states:

"It would be grotesque to discharge Hallowell because the Commonwealth offered the testimony of his co-defendant at trial."

Again, however, the Commonwealth misses the point. I in no way intimate that use of a co-defendant's testimony is wrong; in fact, offering leniency in exchange for testimony is a valuable prosecutorial tool which must be left within the prosecutor's discretion. What is grotesque, however, is the failure to inform the court and jury that, in one aspect, a witness has perjured himself.

**2.** I have no doubt, however, that under the *Starks* analysis applied instantly, knowing use of perjured testimony essential to the Commonwealth's case would bar retrial.

While ordering appellant's discharge would indeed be a very high price to pay, it is the price our system of justice must exact to curb overreaching on the part of the prosecutorial arm of our government. As the United States Supreme Court has stated:

"It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as in obtaining a like result by intimidation."

*Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), *Quoting, Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935). As Judge Simon E. Sobeloff stated in an address to the Judicial Conference of the Fourth Circuit on June 29, 1954 while he was the Solicitor General of the United States:

"The Solicitor General is not a neutral, he is an advocate; but an advocate for a client whose business is not merely to prevail in the instant case. My client's chief business is not to achieve victory but to establish justice. We are constantly reminded of the now classic words penned by one of my illustrious predecessors, Frederick William Lehmann, that the government wins its point when justice is done in its courts."

As the prosecution in the instant case was more concerned with convicting appellant than with obtaining justice, I have no choice but to conclude that the informations must be dismissed.

I would reverse the order of the court below and order the informations dismissed.

ROBERTS and FLAHERTY, JJ., join in this opinion.

214

OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

I agree with Mr. Chief Justice O'Brien that the prosecutor's knowing use of perjured testimony evident on this record must be deemed overreaching. *See United States v. Kessler*, 530 F.2d 1246, 1257–58 (5th Cir. 1976). Such overreaching "signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against." *Commonwealth v. Starks*, 490 Pa. 336, 341, 416 A.2d 498, 500 (1980). The informations, therefore, should be dismissed.

However, I write separately to express disagreement with the view of Mr. Justice Larsen and Mr. Justice Kauffman, advanced in their joint Opinion in Support of Affirmance, that appellant has waived his claim of overreaching by failing to raise it on his direct appeal. Acceptance of this view would result in the creation of a novel and unfair procedural trap serving no legitimate jurisprudential interest.

Our present practice, with which appellant has fully complied, requires a defendant to raise before retrial a claim of overreaching, and permits a pre-retrial appeal from an adverse determination. *See Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). This practice provides an effective, fair and reasonable vehicle for prompt adjudication of claims of prosecutorial overreaching, assuring proper development of the record necessary to adjudicate such a claim. *See, e. g., Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980) (pre-retrial evidentiary hearing held pursuant to present procedure facilitated resolution of overreaching claim). Moreover, this practice assures that the issue of overreaching is ripe: the Commonwealth is seeking to retry the defendant, and the defendant is claiming that retrial will place him twice in jeopardy.

In derogation of the salutary principles embodied in existing practice, the view of Mr. Justice Larsen and Mr. Justice Kauffman erroneously presupposes that reprosecution will automatically follow an appellate court's vacation of judgment. However, for myriad reasons prosecuting officials may determine that reprosecution is inappropriate. *See, e. g., Commonwealth v. Shaw*, 494 Pa. 364, 367, 431 A.2d 897, 898 (1981) (Commonwealth nolle prossed charges after defendant charged with murder was granted new trial; defendant testified against co-defendant). By requiring the defendant to raise his overreaching claim on direct appeal before the decision to reprosecute has been made, Mr. Justice Larsen and Mr. Justice Kauffman would have the defendant on appeal seek relief from reprosecution even though reprosecution may never occur. It has never been our practice to render a wholly advisory opinion, let alone require a party to ask for one. See, e. g., *Mt. Lebanon v. Allegheny County Board of Elections*, 470 Pa. 317, 368 A.2d 648 (1977); *Packel v. Takiff*, 457 Pa. 14, 321 A.2d 649 (1974).

Even if Mr. Justice Larsen's and Mr. Justice Kauffman's proposed radical departure from existing practice were not so unreasonable, it would be improper, in 1981, to impose their new procedural rule on appellant's appeal taken in 1976 and decided in 1978. Certainly, before and since adjudication of appellant's direct appeal, other litigants who have raised claims of overreaching before retrial have had the benefit of existing law. See, e. g., *Commonwealth v. Washington*, 492 Pa. 572, 424 A.2d 1340 (1981); *Commonwealth v. Hoskins*, 494 Pa. 600, 432 A.2d 149 (1981); *Commonwealth v. Starks*, supra; *Commonwealth v. Lee*, 490 Pa. 346, 416 A.2d 503 (1980); *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978); *Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978).

It is the height of unfairness to tell a litigant such as appellant, who likewise has complied with every procedural requirement previously announced, that his claim will not be

considered because of some newly-fashioned rule. As Justice Harlan observed on behalf of a unanimous Supreme Court of the United States,

> "[n]ovelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decision, seek vindication in state courts of their federal constitutional rights."

*NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457–58, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958). See also *Duncan v. Louisiana,* 391 U.S. 145, 169, 88 S.Ct. 1444, 1458, 20 L.Ed.2d 491 (1968) (Black, J., joined by Douglas, J., concurring) ("the Due Process Clause gives all Americans, whoever they are and wherever they happen to be, the right to be tried by independent and unprejudiced courts using established procedures and applying valid pre-existing laws").

Surely it is ironic that Mr. Justice Larsen and Mr. Justice Kauffman should express concern for principles of procedural order but then depart from the same principles in avoiding the merits. By unjustifiably refusing to address the merits, Mr. Justice Larsen and Mr. Justice Kauffman will cause only further delay in the resolution of appellant's claim, either by way of ineffective assistance litigation or by federal review.*

The merits of appellant's overreaching claim should be addressed, and the view expressed in the Opinion of Mr. Chief Justice O'Brien, in which I join, should prevail.

O'BRIEN, C. J., and FLAHERTY, J., join in this Opinion in Support of Reversal.

---

* Equally untenable is the view expressed in the Opinion in Support of Affirmance of Mr. Justice Nix. No case of this Court would condition relief only upon a showing by appellant that the error of the first trial "would taint a retrial." To the contrary, the issue of "taint" is wholly irrelevant to the constitutional prohibition against being placed twice in jeopardy. As the citations contained in the Opinion of Mr. Justice Nix indicate, the "taint" theory is espoused by Mr. Justice Nix alone, and is shared by no other member of this Court.