J-S74029-17

2018 PA Super 151

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICHARD HEWLETT | : | |
| | : | |
| Appellant | : | No. 906 EDA 2016 |

Appeal from the Judgment of Sentence November 6, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000583-2015

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

OPINION BY LAZARUS, J.:                                    **FILED JUNE 05, 2018**

Richard Hewlett appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions of one count of aggravated assault[1] and two counts of violating the Uniform Firearms act.[2]  After careful review, we affirm.

The Trial court summarized the facts of this case as follows:

[Hewlett] was inside the Eagle Bar, 3653 Germantown Avenue, Philadelphia, on December 24, 2014, at approximately 11:00 PM. Later, Tiffany Johnson entered the bar, and shortly thereafter, proceeded to the ladies' restroom.  In doing so, she walked past [Hewlett] who was standing near the back door, approximately five (5) feet away from the restroom.  A conversation ensued and [Hewlett] threatened her and demanded money stating she would have to "start paying rent."  [Johnson] refused his demand and [Hewlett] engaged her in a further verbal dispute.  Another patron interrupted the exchange and [Johnson] entered the ladies'

---

[1] 18 Pa.C.S.A. § 2702(a)(3).

[2] 18 Pa.C.S.A. §§ 6105, 6106.

restroom. [Hewlett] followed her into the restroom and struck her in the back of the head three (3) times. She turned to face him and [Hewlett] continued to strike her with a grayish black handgun. [Hewlett] struck her in the face and [] head with the gun. During the assault, which lasted two (2) to three (3) minutes, [Hewlett] took her wallet, identification, [a]ccess card, and $900.00 []. Afterward, Hewlett walked out of the restroom and back into the bar. [Johnson] came after him and demanded that he return her wallet. A further physical confrontation ensued and defendant struck her several times with his fists. [Johnson] stated that although the facility was dimly lit, she could see her attacker's face. The following day, [Johnson] went to Albert Einstein Medical Center and was treated for a contusion on the right side of her forehead, a scar on her wrist, and an abrasion on the right side of her neck. The next day, [Johnson] gave a written statement to Sergeant Vincent Dayton.

On December 31, 2014, Police Officers Timothy Stephan and Keith White attempted to stop [Hewlett] after he disregarded a stop sign while operating a green 1998 Ford Explorer with a Pennsylvania license plate. The officers activated their lights and siren[,] but [Hewlett] failed to stop and instead accelerated to over fifty-five (55) miles per hour in a residential area. A high-speed chase ensued through several intersections, including the red light at Old York Road and Erie Avenue, and a stop sign at Percy and Butler Street. The vehicle struck the curb and began to roll along the sidewalk on the 3000 block of Delhi Street where[,] defendant exited and fled on foot. Officer Stephan pursued him and observed [Hewlett] clutching his waistband while fleeing over a distance of one (1) to two (2) blocks. During the foot chase, [Hewlett] briefly crouched between two parked vehicles in the 3800 block of [North] 10th street. When Officer Stephan attempted to arrest him, defendant shoved the officer and continued to flee.

Officer Stephan pursued [Hewlett] into the unlocked property at 3823 [North] 10th street. Once inside, [Hewlett] assumed a fighting stance and squared off with Officer Stephan. A physical confrontation followed with defendant throwing several punches and at one point lifting Officer Stephan from the ground and dropping him to within a foot of a nearby glass table. Officer Joseph Marion and his partner responded to a request for backup. When he saw [Johnson] throw Officer Stephan toward the table, Officer Marion entered the affray and exchanged blows with

[Hewlett]. Finally, when [Hewlett] continued to resist arrest, Officer Marion engaged a probe from his Taser. The first probe did not stop [Hewlett] so he deployed a second one, which stunned [Hewlett] and officers were able to hand-cuff him. After [Hewlett's] arrest, Officer Stephan recovered a loaded silver and black .40 caliber Smith and Wesson handgun from the area where [Hewlett] had crouched between two parked vehicles in the 3800 block of [North] 10th street during the foot chase.

During her testimony at trial, [Johnson] observed that a spectator, Maurice McCall, was using his cellphone in the courtroom. The use of any electronic device in the courtroom is prohibited and signs are posted to that effect on the courtroom doors. After the jurors were escorted out of the courtroom, the prosecutor stated: "people don't want to give their names . . . it is because of behavior like this that people don't want to come to court and testify." Upon examination of the phone's content, it was discovered that [McCall] was sending messages directly related to [Johnson's] testimony. [McCall] wrote, "This bitch just got on the stand on rich grove (phonetic)." This court admitted that evidence but did so with a curative instruction to the jury as to how they were to consider it. Additionally, [Johnson] testified that she received calls from [Hewlett] prior to her testimony at trial. During one of those calls, [Hewlett] identified himself as "Rick" and requested that [Johnson] not come to court and he told her that he would pay her. The jury also heard prison recordings of [Hewlett's] telephone conversations. A stipulation as to the authenticity of the recordings was presented to the jury. One of the calls included a conversation wherein [Hewlett] stated, "They found a gun with no clip. The clip [is] on 10th street some fucking where. You know what I'm saying." [Hewlett] also stated that he "was fighting the cops. I knocked like two, three cops up."

Trial Court Opinion, 3/1/17, at 2-4 (citations to record omitted).

On September 1, 2016, following a jury trial, the jury convicted Hewlett of aggravated assault of a police officer and carrying a firearm without a license. On the same date, pursuant to a stipulated waiver trial at which the parties stipulated to Hewlett's prior conviction of robbery and consequent ineligibility to possess a firearm, the trial court convicted him of possession of

a firearm by a prohibited person. On November 6, 2015, the trial court imposed consecutive terms of imprisonment of five to ten years for aggravated assault, five to ten years for possession of a firearm by a prohibited person, and three and one-half to seven years for carrying a firearm without a license, for an aggregate term of 13½ to 27 years' imprisonment. On November 13, 2016, Hewlett filed a post-sentence motion, which the court denied by operation of law on March 15, 2016. On March 16, 2016, Hewlett timely appealed. Both Hewlett and the trial court have complied with Pa.R.A.P. 1925. On appeal, Hewlett raises the following issues:

> 1. Did the Commonwealth present sufficient evidence to find [Hewlett] guilty beyond a reasonable doubt?
>
> 2. Did the trial court abuse [its] discretion when it allowed the Commonwealth to present evidence from a spectator's cell phone that wasn't relevant to [Hewlett] [sic] and [thus,] the prejudicial effect of the evidence outweighed the probative value?

Brief of Appellant, at 3.

Hewlett first raises a sufficiency of the evidence claim. Our standard for reviewing challenges to the sufficiency of the evidence is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

- 4 -

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Caban*, 60 A.3d 120, 132-33 (Pa. Super. 2012), quoting *Commonwealth v. Quel*, 27 A.3d 1033, 1037-38 (Pa. Super. 2011).

First, Hewlett avers that the evidence was insufficient to support a conviction for aggravated assault against a police officer because his "actions rise no higher than resisting arrest . . . as the evidence does not support that the appellant 'attempted to cause or intentionally or knowingly caused bodily injury to any of the officers' involved in this case." Brief of Appellant, at 14.

In Pennsylvania, an individual is guilty of aggravated assault against a police officer if he "attempts to cause or intentionally or knowingly cause a bodily injury to a police officer . . . in the performance of duty[.]" 18 Pa.C.S.A. § 2702(a)(3). To prove aggravated assault against a police officer "[t]he Commonwealth need not establish that the [officer] actually suffered bodily injury; rather, ***it is sufficient to support a conviction if the Commonwealth established an attempt to inflict bodily injury***." *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994) (emphasis added). The term "officer" is defined as "the officers, agents, employees and other persons referred to in subsection as follows: (1) Police Officer[.]" 18 Pa.C.S.A. § 2702(c)(1).

The Crimes Code defines the *mens rea* of "intent" as follows:

> ***A person acts intentionally with respect to a material element of an offense when:***
>
> (i) if the element involves the nature of his conduct or a result thereof***, it is his conscious object to engage in conduct of that nature or to cause such a result***; and
>
> (ii) if the element involves the attendant circumstance, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1) (emphasis added).

When Officer Stephan confronted Hewlett in the property located at 3823 North 10th Street, Hewlett raised his hands, clenched them into fists, and assumed a fighting stance. Hewlett threw a punch at Officer Stephan and threw the officer's body towards a glass table, which he narrowly avoided. Immediately afterward, Officers Marion and Ortiz entered the property. Hewlett punched Officer Marion in the face, in the "area in between the nose and the upper lip." N.T. Jury Trial, 9/2/15, at 43. After Hewlett struck Officer Marion's face, Officer Ortiz tackled Hewlett to the ground. Although no further "significant strikes" contacted any of the officers, Hewlett continued to kick, elbow and punch the three officers. ***Id.*** at 21. In light of the foregoing, the evidence presented by the Commonwealth was clearly sufficient to sustain a conviction of aggravated assault against a police officer. ***Caban***, ***supra***.

Next, Hewlett avers that the evidence is insufficient to sustain a conviction for carrying a firearm without a license and possession of a firearm by a prohibited person.

The Uniform Firearms Act provides, in relevant part, as follows:

§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms

**(a) Offense Defined.--**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

**(b) Enumerated offenses.—The following offense shall apply to subsection (a):**

\*          \*          \*

Section 3701 (relating to robbery)[.]

\*          \*          \*

§ 6106.  Firearms not to be carried without a license.

**(a) Offense defined.—**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. §§ 6105(a) and (b), 6106(a).

In order to convict a defendant for possession of a firearm by a prohibited person, the Commonwealth must prove the defendant was previously convicted of a specific offense enumerated in section 6105. *Commonwealth v. Jemison*, 98 A.3d 1254, 1261 (Pa. 2014).  In order to

convict a defendant for carrying a firearm without a license, the Commonwealth must prove: that the weapon was a firearm; that the firearm was unlicensed; and that where the firearm was concealed on or about the person, it was outside his home or place of business. ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa. Super. 2004). The Commonwealth may sustain its burden of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence. ***Commonwealth v. Wise***, 171 A.3d 784, 790 (Pa. Super. 2017).

Here, Hewlett exited a vehicle, following a high-speed chase, and fled from police while clutching his waistband. Police, during their pursuit, observed Hewlett crouching between two vehicles and viewed him place an item between the two parked cars. Later, police recovered a .40 caliber Smith and Wesson handgun from the area where Hewlett had been crouching. Additionally, Hewlett admitted to carrying a firearm in recorded prison telephone conversation with his girlfriend. In light of Hewlett's admission and the police officers' observations, a fact-finder could reasonably conclude that Hewlett had been in possession of the handgun. ***See Commonwealth v. Schley***, 136 A.3d 511, 519 (Pa. Super. 2016), quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (Commonwealth is entitled at trial to all reasonable inferences arising from the evidence). Furthermore, both parties stipulated to Hewlett's prior conviction of robbery and consequent ineligibility to possess a firearm. 18 Pa.C.S.A. § 6106.

Hewlett's only cogent challenge to the sufficiency of the evidence is that "a discrepancy [existed] as to the location of the recovered firearm" where police "testified . . . that [it] was recovered on the 3800 block of 10th [S]treet however, police paperwork stated that [it] was recovered from the 3800 block of Delhi Street." Brief of Appellant, at 16. This argument is without avail. Mere conflict in the evidence does not render it insufficient; any discrepancies are for the fact finder to resolve. ***Commonwealth v. Hargrave***, 745 A.2d 20, 22 (Pa. Super. 2000).

Hewlett's final claim on appeal is that the trial court abused its discretion when it allowed the Commonwealth to present evidence from a spectator's cell phone that was irrelevant and prejudiced his defense. Hewlett has waived this claim on appeal.

At his jury trial, Hewlett objected to the Commonwealth's request to present evidence of a spectator's cell phone; however, upon the court's request, counsel for Hewlett agreed to and drafted a curative instruction. Specifically, Hewlett's draft curative instruction, which was adopted by the trial court, stated that any testimony regarding a spectator's attempt to photograph Johnson be considered only for the "effect, if any, it had" on the witness's testimony and that "there is no evidence that [Hewlett] . . . solicited this behavior." N.T. Jury Trial, 9/2/15, at 181. Hewlett acquiesced to the trial court's ruling and complied with its instruction to furnish it with a curative

instruction. Therefore, he has waived any challenge to the court's ruling.[3]

***Commonwealth v. Einhorn***, 911 A.2d 960, 976 (Pa. Super. 2006), citing

***Commonwealth v. Hill***, 388 A2d 689, 692 (Pa. 1978) (defendant who

requests and receives relief for alleged error may not seek additional relief at

later time). ***See also Commonwealth v. Hallowell***, 439 A.2d 1140, 1141

(Pa. 1981) (litigant who seeks and receives specific relief for a given error

cannot seek additional relief at a later time), citing ***Commonwealth v.***

***Hoskins***, 403 A.2d 521, 526 n. 12 (Pa. 1978) ("since [appellant] failed to do

anything more than object and request to the striking of testimony in some

instances, he received all the relief requested and cannot now seek further

relief.").[4]

---

[3] We are aware of the recent decision of our Supreme Court, ***Commonwealth v. Fulton***, ___ A.3d ___, 2018 WL 987963 (Pa. February 21, 2018), in which the Court held that evidence gathered from a cell phone powered on without a warrant could not be used against a defendant. Here, we make no determination as to whether the contents of the spectator's cell phone could be used against either the spectator or the defendant, where the defense formulated a curative instruction that was accepted by the trial court and read to the jury. Rather, we simply affirm the authority of a trial court to enforce its order that a cell phone may not be used in its courtroom for any purpose, particularly during a trial and especially if the effect of such use is to intimidate a witness while she is testifying.

[4] Even if Hewlett had not waived this claim, it is meritless. At trial, Johnson noticed a man in the courtroom texting and attempting to photograph her on his cell phone. The trial court stopped the proceedings, excused the jury, examined the man's cell phone and found a recent text message in which he told an unknown party that "[Johnson] just got on the stand on rich grove (phonetic)." Consequently, the trial court confiscated the phone and allowed the Commonwealth to elicit evidence of the spectator's use of the phone in the courtroom on the condition that Hewlett draft a curative instruction for the

Judgment of sentence affirmed.

Judge Ransom joins this Opinion.

Judge Bowes files a Concurring Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/18

---

jury. The text message was not submitted to the jury, but the Commonwealth was ultimately permitted to offer Johnson's testimony that she saw a man in the courtroom using his phone during her testimony and then attempt to photograph her.

It was well within the sound discretion of the trial court to allow evidence that bore on Johnson's credibility and the effect that the spectator's actions had on her testimony. Pa.R.E. 607; **Commonwealth v. Golphin**, 161 A.3d 1009, 1026 (Pa. Super. 2017) (evidence that bears on the credibility of witness is relevant and admissible). Her immediate report of the incident to the deputy sheriff demonstrates that she was disturbed and/or afraid of the spectator's attempt to record her while providing testimony. The jury presumably followed the curative instruction Hewlett drafted, and thus, it eliminated any potential prejudice. **Commonwealth v. Poplawski**, 130 A.3d 697, 717 (Pa. 2015), citing **Commonwealth v. Carter**, 643 A.2d 61, 77 (1994) (trial court's instruction to jury not to consider statements as evidence cured any potential prejudice).

- 11 -