383 A.2d 909

COMMONWEALTH of Pennsylvania

v.

William Kern HALLOWELL, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Jan. 20, 1978.

Decided March 23, 1978.

Mead S. Spurio, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Adrian L. DiLuzio, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-
EROY, MANDERINO and LARSEN, JJ.

OPINION

LARSEN, Justice.

On July 5, 1973, Mrs. Dorothy Hallowell was found mur-
dered in her sister's home in Philadelphia, Pennsylvania.
Appellant, William Kern Hallowell, the son of the deceased,
was arrested on July 6, 1973, and charged with the murder,
burglary and aggravated robbery. Also arrested and simi-
larly charged with these crimes was Charles Way, appel-
lant's roommate at the time. Following a jury trial, appel-
lant was found guilty of murder in the first degree and
aggravated robbery for which he was sentenced to life
imprisonment and a term of ten to twenty years imprison-
ment, respectively. Appellant appeals from both sentences.

At trial, the Commonwealth produced co-defendant
Charles Way, who testified as the only eyewitness to the
killing and robbery. Way's testimony was critical to the
Commonwealth's case against appellant. Way testified that
on the evening of July 1, 1973, appellant had called him and
asked Way to help him kill his mother. Way and appellant
accompanied the deceased to her sister's home whereupon
appellant attacked his mother, striking her four or five
times with a hammer until she was in a state of semicon-
sciousness. (The deceased died from these injuries.) Appel-
lant then, according to Way's testimony, proceeded to search
the house for valuables, emptied the contents of deceased's
purse on a table and removed some credit cards therefrom.
Appellant then took a television set from the house to make
it appear as if vandals had perpetrated the crime.

On cross-examination, defense counsel sought to discredit
Way's testimony by questioning him in regards to expecta-
tions of leniency in his own criminal prosecution that may
have been made to him by the Commonwealth in return for
his cooperation in testifying at appellant's trial. Way con-
sistently denied that he had any expectations of leniency in

his own case and explained he was testifying in order to "clear it all up".

Subsequently, the defense called Edward Rendell, Esquire, who had been chief of the homicide division of the district attorney's office until about six weeks prior to trial. Rendell was asked if he knew if any leniency had been extended to Way in connection with this case. Rendell replied that as chief of homicide it would be his decision to extend any leniency in any form whatsoever to any witness or co-defendant, and stated unequivocally there had been no offer of any leniency whatsoever made to Way, either from himself or from his subordinates. The next day upon questioning by the Court, Rendell explained that he had recommended reduced bail for Way and requested that no detainer be lodged against him. Rendell testified that the purpose in so doing was to allow Way to remain out of jail until appellant's trial so that Way would not be subjected to pressure from other inmates which might induce him to refuse to testify. This testimony clearly conveyed the concept that the only leniency offered Way was related to the bail and the detainer.

After appellant's trial and conviction on April 11, 1974, a sentencing hearing was held for Way on December 5, 1975. At the sentencing, Way testified that there had been indications from the day of his arrest, and prior to his making any statement to the police, that the Commonwealth would recommend a lesser sentence for Way's cooperation in appellant's trial. Way further testified that as a result of the representations made to him by Mr. Rendell and by his defense counsel, he did in fact cooperate with the Commonwealth by testifying at the preliminary hearing and trial of appellant.

The attorneys for the district attorney's office at the sentencing hearing corroborated Way's testimony. They told the Court that a plea had been negotiated with Way whereby Way would plead to murder in the second degree "and the Commonwealth would recommend a sentence of two to eight years in return for Mr. Way's testimony at the

trial of William Hallowell". The district attorney's office stated that since Way did testify at Hallowell's trial and did meet his end of the bargain, it was incumbent upon the Court to uphold the plea negotiations entered at that time, i. e. prior to appellant's trial.

The Court, at the sentencing hearing, found that Way had complied with his end of the bargain, accepted the plea of murder in the second degree, imposed the sentence recommended by the district attorney's office of two to eight years and accepted the Commonwealth's motion to nolle pros Way's bills of indictments for robbery and burglary. The district attorney's office noted at Way's sentencing hearing that they had no evidence upon which to convict appellant other than Way's testimony. Our evaluation of the record in this case confirms that Way's testimony was essential to the prosecution's case.

Appellant contends that his conviction should be reversed because the trial assistant district attorney and/or his superiors permitted and encouraged Charles Way to perjure himself when he testified that no offer of leniency had been made to him by the Commonwealth and, further, the prosecution permitted the testimony of the former chief of the homicide division to mislead the Court and jury into thinking that no offers of leniency to Way had been made. Upon analysis of the records, we find that Way perjured himself; we find that the testimony of the former chief of homicide was misleading; and we find that the district attorney's office was guilty of perpetrating a falsehood and a fraud upon the Court, jury and people of this Commonwealth . . all of which mandates a reversal of the judgment of sentence and the granting of a new trial.

In *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the United States Supreme Court confirmed the principle that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ." *Id.* at 269, 79 S.Ct. at 1177. We have similarly held. "It is, of course, an established principle that a conviction obtained through the knowing use of materially

false testimony may not stand; a prosecuting attorney has an affirmative duty to correct the testimony of a witness which he knows to be false." *Commonwealth v. Carpenter,* 472 Pa. 510, 372 A.2d 806, 810 (1977); *Commonwealth v. Gaddy,* 468 Pa. 303, 314, 362 A.2d 217, 222 (1976); *Commonwealth v. Moehring,* 445 Pa. 400, 285 A.2d 487 (1971); see A.B.A. Standards Relating to the Prosecution Function, §§ 3.11, 5.6, comment (a).

Appellee, however, argues that no evidence has been adduced to show that the *particular* assistant district attorney at the trial was aware of the perjured and misleading testimony and that, therefore, the law does not require the prosecutor to reveal perjured and misleading testimony when he is unaware of it, for such would be impossible. We reject this contention.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is exculpatory, "irrespective of the good faith or bad faith of the prosecution". *Id.* at 87, 83 S.Ct. at 1197. The good faith, or lack thereof, by the prosecutor is immaterial because the concern is not punishment of society for misdeeds of the prosecutor, but avoidance of an unfair trial to the accused. *Id.,* citing *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Applying these principles, the Court, in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), held that the trial prosecutor's knowledge of offers of leniency made to the co-defendant and chief witness was immaterial.

"[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. *The prosecutor's office is an entity* and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government." *Id.* at 154, 92 S.Ct. at 766.

In *Commonwealth v. Jenkins,* 476 Pa. 467, 383 A.2d 195 (1978) we held, "It is the effect on the right to a fair trial,

238

not the prosecutor's state of mind, that results in reversible error." *Id.*, 476 Pa. at 474, 383 A.2d at 198.

We hold, therefore, that where the prosecution fails to correct a witness's testimony at trial denying offers of leniency, when in fact such offers had been made, rudimentary demands of justice dictate that a defendant's conviction be reversed and a new trial granted, whether or not the trial prosecutor was actually aware of those offers. Promises of leniency by an assistant district attorney are attributed to the office of the district attorney as an entity.

Additionally, appellant will be entitled to a suppression hearing on all items taken from his apartment in New Jersey under the authority of a New Jersey search warrant. Appellant had no knowledge of the New Jersey search until after the commencement of the trial and hence "the opportunity did not previously exist"[1] to timely file an application for suppression of the evidence. In fact, the Commonwealth purposefully mislead the appellant into thinking there had not been any such search. The assistant district attorney, at a court hearing on appellant's petition for a bill of particulars requesting information pertaining to any search and seizure warrants, told the Court and appellant, "As your Honor knows, when a search warrant is executed, the person concerned gets a copy of the warrant." Appellant was never given a copy of the New Jersey search warrant.

Judgment of sentence is reversed and the case is remanded for a new trial, prior to which appellant is entitled to a suppression hearing on the evidence seized pursuant to the New Jersey search warrant.

NIX, J., did not participate in the consideration or decision of this case.

POMEROY, J., concurs in the result.

1. Pa.R.Crim.P. 323(b).