455 A.2d 1187

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William WALLACE, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1982.

Decided Feb. 3, 1983.

272

Thomas O. Vreeland, Washington (court-appointed), for appellant.

Herman J. Bigi, Dist. Atty., Daniel L. Chunko, First Asst. Dist. Atty., Washington, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

In this appeal, we must determine whether the district attorney's failure to correct certain false testimony rendered by the chief witness for the Commonwealth and failure to provide defense counsel with that witness' complete criminal background and record upon request has deprived appellant of his right to a fair trial. We answer in the affirmative and grant appellant a new trial.

On August 17, 1979, at approximately 5:20 p.m., two men were seen running from Carl's Cleaners in Canonsburg, Washington County, holding handguns. Moments later, Carl Luisi, Sr., the owner of Carl's Cleaners, and fifteen year old Tina Spalla, an employee of Mr. Luisi, were found lying on the floor of the store. Each had been shot. Carl Luisi was pronounced dead at the scene. Tina Spalla, unconscious but still alive, was fatally wounded and died a short while later. The cash register was ajar, and, it was later determined, $227.00 had been taken from it. Appellant was apprehended on August 20, 1979, in Wheeling, West Virginia, by members of that city's police department. Appellant's co-defendant Henry Brown was subsequently arrested.

A jury trial commenced on December 3, 1980, before the Honorable John F. Bell in the Court of Common Pleas of

Washington County, but resulted in a mistrial due to the inability of the jury to reach a verdict. Because of the extensive publicity which was generated by this trial, a jury was selected in Erie County by order of this Court and brought to Washington County for the second trial which began on February 2, 1981.

Appellant was convicted of murder of the first degree for the death of Tina Spalla, murder of the second degree for the death of Carl Luisi, Sr., robbery and criminal conspiracy. The Commonwealth sought the death penalty and a sentencing proceeding was held before the same jury on February 7, pursuant to the procedures established by section 9711 of the Sentencing Code, 42 Pa.C.S.A. § 9711. The jury found that the aggravating circumstance—the killing was committed while in the perpetration of a felony, 42 Pa.C.S.A. § 9711(d)(6)—outweighed any mitigating circumstances, and returned a sentencing verdict of death, as mandated, upon such a finding, by the Sentencing Code. 42 Pa.C.S.A. § 9711(c)(1)(iv).

On September 13, 1981, a motion for an evidentiary hearing and a new trial based upon after discovered evidence was filed. Following an evidentiary hearing, Judge Bell denied the motion. On February 11, 1982, a court en banc issued an opinion and order, per Judge Bell, denying appellant's post-verdict motions. On February 25, appellant was sentenced to death. This appeal was then automatically docketed in this Court pursuant to JARA, 42 Pa.C.S.A. § 722, and the Sentencing Code, § 9711(h).

 While appellant does not specifically raise the issue of sufficiency of the evidence to sustain the convictions, this Court will conduct an independent review of the record for sufficiency in capital punishment cases. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, at 26, n. 3, 454 A.2d 937 at 942, n. 3 (1982). The evidence adduced at appellant's second trial, together with all reasonable inferences in the Commonwealth's favor, *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976), discloses the following. The victims had

been shot with a .32 caliber weapon.[1] The day's receipts ($227.00) had been stolen from the open cash register. Two men, one of whom matched appellant's general physical characteristics and wore a beige trench coat, were observed fleeing Carl's Cleaners carrying handguns and driving away in what was determined to have been Henry Brown's car. Brown's fingerprint was "lifted" from the cash register in Carl's.

Appellant and Henry Brown had been seen driving in Wheeling, West Virginia in the latter's car at about 1:00 p.m. on the day of the homicides. Appellant had been wearing a beige trench coat and carrying a .32 caliber weapon. A beige trench coat belonging to appellant, which looked like the one worn by one of the men who had run from Carl's Cleaners, had been obtained from the Spic & Span Cleaners in Wheeling, where it had been delivered on August 23, 1979 (apparently by appellant's girlfriend).

The most critical testimony was given by Olen Clay Gorby, undoubtedly the Commonwealth's key witness. Gorby testi-

1. There was, however, some dispute on this issue as Doctor Ernest Abernathy, the pathologist who performed the autopsies, had noted on his report that the slug removed from Tina Spalla's body, which he had marked with the notation "08", was a .38 caliber slug. Dr. Abernathy had also marked the two slugs that were removed from the body of Carl Luisi, one with "08" and the other with "A". The doctor, who had some training in ballistics, testified at trial, however, that the slugs could have been .32 caliber. Notes of Testimony (N.T.), Second Trial, February 2, 1981 at 62–64, 67. Dr. Abernathy gave the slugs to Trooper Paul Bivens who observed the doctor scratch the notations on the base of the bullets. N.T. Second Trial at 260.

Trooper Daryl Mayfield, a ballistics expert with the Pennsylvania State Police, examined three discharged bullets that had been given him by Trooper Bivens, and testified that these bullets were .32 caliber and had been fired by the same gun. Since the murder weapon had not been found, Trooper Mayfield had no gun with which to match the bullets. Mayfield further testified on cross-examination that he had not seen the notation "08" on any of the slugs which he had examined with a comparison, compound microscope. N.T. Second Trial at 244–46.

Appellant asserts that there was an insufficient foundation for admission of the bullets introduced at trial through Trooper Mayfield. Given our disposition of this appeal, however, there is no need to address this issue.

fied that he had been an inmate at the Washington County Jail when appellant, who he had known for seven years, had been moved to Gorby's section of the jail on July 12, 1980. Appellant had, according to Gorby, related to him his involvement with the robbery/homicide at Carl's Cleaners, bragging that he and Henry Brown had robbed Carl's Cleaners and that appellant had shot the "old man" twice when he lunged at appellant and shot the girl to prevent her from identifying them. Gorby also stated appellant had mentioned owning a .32 caliber gun that he had hidden, and that appellant spoke about killing Henry Brown since he "was the only real evidence against appellant". N.T. Second Trial at 214–19.

From the foregoing, we conclude that the evidence, and all reasonable inferences in favor of the Commonwealth, are sufficient to sustain the convictions for murder of the first degree, murder of the second degree, robbery and conspiracy.

■ Appellant argues that the district attorney and his staff suppressed exculpatory evidence relating to the chief witness, Gorby, and failed to correct certain false material testimony rendered by that witness. We agree.[2]

■ In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "that the suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." See ABA Standards for Criminal Justice § 3–3.11. The prosecutor, whose duty of course is to seek justice, not merely to convict, ABA Standards for

**2.** Of course, any errors that have occurred concerning Olen Clay Gorby and the Commonwealth's failure to disclose exculpatory information do not affect our review of the evidence for sufficiency which must be evaluated on the entire trial record without regard for the correctness of the trial court's rulings, even as to matters of constitutional dimension. *Commonwealth v. Cohen*, 489 Pa. 167, 413 A.2d 1066 (1980); *Commonwealth v. Hoskins*, 485 Pa. 542, 403 A.2d 521 (1979).

Criminal Justice § 3–1.1(c), has an affirmative and continuing duty to disclose exculpatory information to the defendant and to correct false testimony of a witness. *See Commonwealth v. Hallowell*, 477 Pa. 232, 237, 383 A.2d 909 (1978); Pa.R.Crim.Pro. 305 D, Continuing Duty to Disclose; ABA Standards for Criminal Justice § 3–3.11. Further, the prosecutor's office is an *entity* and the knowledge of one member of the office must be attributed to the *office* of the district attorney *as* an entity. *Commonwealth v. Hallowell, supra,* 477 Pa. at 237–38, 383 A.2d 909 *and Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

The rule of *Brady* applies in three different situations, *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), two of which are present in the instant case.[3] The first situation obtains when the prosecution achieves a conviction through the use of materially false or perjured testimony. *Id.* at 103–04, 96 S.Ct. at 2397–2398. *See e.g., Commonwealth v. Hallowell, supra* 477 Pa. at 236, 383 A.2d 909; *Commonwealth v. Carpenter,* 472 Pa. 510, 372 A.2d 806 (1977); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States, supra* 405 U.S. at 153, 92 S.Ct. at 765 citing *Napue v. Illinois, supra* 360 U.S. at 269, 79 S.Ct. at 1177. *See Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234, 1240 (1977). Moreover, the good faith, or lack thereof, by the prosecutor is not determinative because the concern is not punishment of society for misdeeds of the prosecutor, but avoidance of an unfair trial to the accused—it is the effect on the right to a fair trial, not the prosecutor's state of mind, that constitutes reversible error. *Commonwealth v. Hallowell,* 477 Pa. 232, 237–38, 383 .

**3.** The third situation, not presented herein, arises where no specific request is made for particular exculpatory evidence, but the prosecutor knows, or has reason to believe, that he possesses information or evidence that would tend to exculpate a defendant. *Id.* 427 U.S. at 106–13, 96 S.Ct. at 2398–2402.

A.2d 909 (1978), *citing Brady v. Maryland, supra,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Commonwealth v. Jenkins,* 476 Pa. 467, 383 A.2d 195 (1978).

In this situation, a strict standard of "materiality" is applied, *United States v. Agurs, supra* 427 U.S. at 104, 96 S.Ct. at 2397; that is, the false testimony is material—and a new trial is required—if it could "in *any reasonable likelihood* have affected the judgment of the jury." *Giglio v. United States, supra* 405 U.S. at 154, 92 S.Ct. at 766, *quoting Napue v. Illinois, supra* 360 U.S. at 271, 79 S.Ct. at 1178.

In the instant case, District Attorney Herman Bigi elicited certain testimony from Olen Clay Gorby which the district attorney knew, or should have known, was false, as subsequent events have disclosed. At trial, Gorby testified that he had been in prison continually since his arrest on November 30, 1979 for charges stemming from an incident at the Village Green golf course in Washington County. In fact he had not been in jail that entire period because he had been released from January to March 20, 1980 while working as an undercover agent for the Federal Bureau of Alcohol, Tobacco and Firearms. Trooper William Cunningham, prosecuting officer in appellant's case as well as in all of Gorby's cases, knew of this release.[4]

Gorby also testified that he had pled guilty to "everything he had ever done" when, in fact, he had not. When Gorby was rearrested on March 20, 1980, he was charged with eleven counts of burglary at criminal actions 380–87, 390–91 and 785 of 1980. Gorby did not plead guilty until March 10, 1981, more than one month after appellant's trial.

**4.** It is worthy of note that at the pre-trial hearing before the second trial, in attempting to discover the full scenario of Olen Gorby's cooperation with the prosecution, the court asked First Assistant District Attorney Daniel Chunko whether Gorby was a law-enforcement agent. Chunko replied, in the presence of Trooper Cunningham, "He is not a law-enforcement agent *and never has been, your Honor.*" Then the court asked if he was operating in appellant's case for the Pennsylvania State Police. At the after discovered evidence hearing, Trooper Cunningham was asked why he did not "jump up" and correct the court, and Cunningham explained he thought the questions had pertained only to the Wallace prosecution. Judge Bell chose to believe the Commonwealth's explanation.

Gorby further testified that he had not fired any shots at the Village Green golf course incident wherein he was charged with attempted homicide, recklessly endangering another person, conspiracy, robbery, burglary and theft by unlawful deception, when in fact he had discharged his gun at least twice at the owner of the golf course and his son.

Finally, Gorby testified that a plea bargain recommendation of five to ten years imprisonment has been made on the charges stemming from the Village Green incident when, in fact, the assistant district attorney, at Gorby's guilty plea hearing on May 21, 1980, had also discussed the possibility of a four to eight year term. *In actuality,* Gorby received only a ten year term of probation on these charges, which ran concurrently with another ten year term of probation on the "assorted burglary" charges.[5]

Clearly, Gorby's testimony on several items concerning his criminal record and background was false, and was allowed to go uncorrected by the district attorney.

Moreover, the Commonwealth concealed exculpatory evidence concerning their "star" witness, namely, substantial portions of his criminal record and, at the first trial and pretrial proceedings, *Gorby's very existence and identity.* This type of failure to disclose information presents the second *Brady* situation, *i.e.,* the defense counsel requests specific exculpatory evidence and the prosecution is totally unresponsive and behaves as if this evidence does not exist.

5. The falsity of Gorby's trial testimony was discovered at the after discovered evidence hearings in October and November of 1981. The motion for a new trial based on after discovered evidence alleged that Gorby had perjured himself with the acquiescence of the District Attorney (it was charged Gorby had fabricated the entire story against appellant) and had been paid for his testimony by the victims' families. The lower court (Judge Bell), finding these allegations to be essentially a matter of credibility, dismissed the motion, choosing to believe the testimony of Gorby, his wife Debra, the district attorney and his staff members, and a state trooper, all of whom denied the allegations. Because these findings on credibility are supported by the record, this Court is not at liberty to disturb them. *Commonwealth v. Sullivan,* 472 Pa. 129, 145, 371 A.2d 468, 476 (1977).

*United States v. Agurs, supra* 427 U.S. at 104–06, 96 S.Ct. at 2397–2399. The Court stated in *Agurs, id.* at 106:

> In *Brady* the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond *either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.* (Emphasis added).

The undisclosed, requested information is material—and the non-disclosure requires a new trial—where the suppressed evidence might have affected the outcome of the trial. *Id.* 427 U.S. at 104, 96 S.Ct. at 2397.

Defense counsel repeatedly made specific requests which were repeatedly ignored by the district attorney's office. Initially, counsel suspected the existence of a "jailhouse confession" because a jailhouse confession had been presented without notice in the prosecution of appellant's co-defendant, Henry Brown. Accordingly, counsel's Request for Discovery and Disclosure pursuant to Pa.R.Crim.P. Rule 305, and his requests at oral argument on the discovery motion, were specifically directed toward discovering if such a statement existed. Item # 2 of the Request tracked the language of Rule 305 B(1)(b) requiring, on request by defendant, the *mandatory* disclosure of "any written confession *or inculpatory statement,* or the substance of any oral confession *or inculpatory statement,* and the identity of *the person* to whom the confession *or inculpatory statement* was made, which is in the possession or control of the attorney for the Commonwealth."

■ Rather than challenge appellant's right to discover the requested information (as is required by Pa.R.Crim.P. Rule 305 A), the Commonwealth unilaterally chose, instead, to ignore the request. It is for the trial court to determine

whether a defendant is entitled to specific requested information, *not* the prosecutor.

Moreover, defense counsel specifically requested, in his Request for Discovery, the criminal records of witnesses. Since the existence of Olen Clay Gorby was not disclosed, obviously there was no resolution at the pre-trial stage of appellant's right to Gorby's complete criminal record. At trial, only the charges arising from the Village Green incident were disclosed to defense counsel; the eleven assorted and pending burglaries were not revealed. Once again, the district attorney, without challenging the appellant's request in court, *unilaterally* determined the arrests on the assorted burglaries to have been non-discoverable by the defense. This unilateral determination was, again, manifestly erroneous. Where a Commonwealth witness has criminal charges pending against him, the defendant is entitled to know of such charges since they bear upon the witness' possible motivation for testifying and, hence, his veracity.

Application of *Brady* and its progeny to the instant case mandates the reversal of appellant's convictions and the award of a new trial. The major focus of the defense was upon the credibility of the Commonwealth's "star" witness, Olen Clay Gorby. (Indeed, no other defense was offered.) Had the jury been completely apprised of Gorby's cooperation and undercover activities with law-enforcement agencies, his three month release from the Washington County Jail while working as an undercover agent for the federal authorities, the fact that he had shot at the owner and his son at the Village Green golf course, the fact that he had not pled guilty to eleven counts of burglary which were hanging over his head, and his entire criminal record, the jury could easily and legitimately have inferred that Mr. Gorby was less motivated by truth or by altruistic motives of truth and sympathy for the homicide victims than by a sincere desire to do "whatever-it-takes" to secure an early release and lenient sentences for his nefarious and numerous crimes. There is an eminently reasonable likelihood the judgment of the jury and the outcome of the trial would

have been affected by knowing the truth about Mr. Olen Clay Gorby.

Appellant requests this Court to discharge him on double jeopardy grounds as, he asserts, the conduct of the district attorney's office amounted to intentional, bad-faith misrepresentations, or "prosecutorial overreaching." *Commonwealth v. Starks,* 490 Pa. 336, 416 A.2d 498 (1980) *and United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). We believe that such a drastic remedy would be premature at this time, and that the award of a new trial is sufficient. *Commonwealth v. Cohen,* 489 Pa. 167, 413 A.2d 1066 (1980).

The lower court found, with adequate support on the record, that there was no perjury by Olen Gorby and that the conduct of the prosecutor was the result of sloppiness as opposed to an intentional, bad-faith effort to mislead the court and jury. The court made no finding, however, as to the intentions/motives of the district attorney's office at the first pre-trial and trial. At those proceedings, relying on the erroneous interpretation of Pa.R.Crim.P. Rule 305 B, the existence/identity of Olen Clay Gorby was not revealed to defense counsel, despite specific requests for "jailhouse confessions". At the first trial, District Attorney Bigi informed the court that he did not know how his office became aware of Olen Gorby but that it had been "probably a month ago".

This representation is suspect because Mr. Bigi, Assistant District Attorney Chunko, Trooper Cunningham and a secretary from the district attorney's office spoke to Gorby and transcribed his statement on July 14, *some five months before* the first trial. The court did not address the issue of prosecutorial misconduct on this point because, in its opinion, the issue was rendered moot by the declaration of a mistrial due to a hung jury and because, therefore, at the second trial, appellant and his counsel were well aware of the witness Gorby and his written statement. Such a ruling might be valid if District Attorney Bigi's representations were simply mistaken and not intentional or in bad faith. In that case, any harm caused by the error would have been

cured by the second trial. However, if the converse is true, the taint of "prosecutorial overreaching" would not have been dissipated by subsequent prosecution. Accordingly, our grant of a new trial is without prejudice to appellant's right to petition the lower court for discharge on double jeopardy grounds (this issue has been preserved throughout these proceedings) prior to reprosecution, if any, at which time that issue would be considered in light of all of the evidence adduced at the after-discovered evidence hearing.

Judgments of sentence reversed and a new trial is granted.

Former C.J. O'BRIEN did not participate in the decision of this case.

NIX, J., filed a concurring opinion.

McDERMOTT, J., concurred in the result.

NIX, Justice, concurring.

I agree with the majority's conclusion that the judgment of sentence must be reversed and a new trial awarded in this case. However, I cannot accept the suggestion that double jeopardy concerns *may* preclude appellant's further prosecution for these offenses. Here the majority concedes that the Commonwealth did in fact present sufficient evidence to sustain convictions of murder in the first degree in the case of Tina Spalla and murder in the second degree of Carl Luisi, Sr. To imply that the error in this trial might require insulating this appellant forever from liability highlights my frequent objections to the mistaken view of the scope of protection provided by double jeopardy. *Commonwealth v. Hoskins,* 494 Pa. 600, 601, 432 A.2d 149, 150–151 (1981) (Nix, J., Opinion In Support of Affirmance); *Commonwealth v. Starks,* 490 Pa. 336, 344, 416 A.2d 498, 502 (1980) (Nix, J., dissenting opinion); *Commonwealth v. Lee,* 490 Pa. 346, 350–351, 416 A.2d 503, 505–506 (1980) (Nix, J., concurring opinion); *Commonwealth v. Potter,* 478 Pa. 251, 287, 386 A.2d 918, 936 (1978) (Nix, J., Opinion In Support of Reversal).

Further, in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) the Supreme Court of the United States held:

> ... that a criminal defendant who successfully moves for a mistrial because of prosecutorial or judicial misconduct may not invoke the bar of the double jeopardy clause of the Fifth and Fourteenth Amendments against a second trial except in those cases in which the prosecutorial or judicial conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

The "prosecutorial overreaching" standard, referred to by the majority (p. 1193), previously an exception to the "manifest necessity" exception to the general rule that when a mistrial is declared over the defendant's objection, retrial is barred, was disavowed as a federal constitutional standard in *Oregon v. Kennedy, supra.* And there is no such standard under state law. Thus the majority's double jeopardy concerns are unwarranted and do not require further consideration.