649 A.2d 662

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Albert ANDERSON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 7, 1994.

Decided Nov. 18, 1994.

Ellen M. Viakley, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal A. Mericli, Michael W. Streily, Kevin McCarthy, Asst. Dist. Attys., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION OF THE COURT

PAPADAKOS, Justice.

We granted allocatur in this case to determine whether the Commonwealth's possible non-disclosure of critical evidence regarding the competency of the complaining witness directly contradicts our authority in *Commonwealth v. Moose*, 529 Pa. 218, 602 A.2d 1265 (1992) and *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983).

In *Moose* we held that the failure of the Commonwealth to disclose the identity of an informant and its understanding with that informant for his testimony against the defendant

constituted a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983), we held that the failure of the Commonwealth to comply with Rule 305 B and disclose the name and criminal record of the Commonwealth's star witness, constituted a clear violation of the *Brady* doctrine.

In the case before us, the question is whether the Commonwealth knowingly failed to disclose to the defense the fact that their complaining witness was the subject of a competency proceeding at the time her deposition for possible use at trial was being taken. If so, was such failure a violation of the rule we have enunciated in *Moose, Wallace*, and Rule 305 B of our Rules of Criminal Procedure?

On October 26, 1988, the videotaped deposition of Elizabeth Sully, a victim of theft by scam artists, was taken before the trial court. The videotape was thereafter introduced at trial before the same judge sitting without a jury and Appellant was found guilty and sentenced on February 20, 1992, to prison for a term of three and one-half years to seven years. The videotape taken on October 26, 1988, was made pursuant to an agreement by all parties that Elizabeth Sully's age of eighty-eight years could result in her mental incapacity to testify at the time of trial. (R.R., p. 251.) Their prophecy was soon realized. Because of Elizabeth Sully's subsequent incapacity to give testimony, the videotaped deposition was admitted into evidence.

At the time when that deposition was recorded, however, Elizabeth Sully was also the subject of a pending mental incapacity petition in the Orphans' Court of Allegheny County. It is alleged that the District Attorney's office had knowledge of the pending petition, and did not notify the defense lawyers of this fact.

Appellant asserts that had he been aware of the contemporary proceedings in the Orphans' Court, his strategy at the videotaped deposition would have been different and would

have included an argument for the witness's deficiency in the deposition itself.

The facts indicate that Elizabeth and her eighty-six year old sister, Jane Sully, lived together on monthly retirement checks, bonds and certificates of deposit. The defendant was accused of convincing the sisters to do unnecessary repair work on their home, buy appliances, have personal checks made out to the defendant, execute a power of attorney to him which controlled their financial affairs, and empty their deposit box of cash, bonds and certificates. Elizabeth Sully's videotaped deposition in court detailed these acts and identified the defendant as the perpetrator.[1]

Although Appellant's attorney agreed to the deposition, he reserved the right to test the witness's capacity to testify at trial. (R.R., p. 19.) The trial commenced some three years later. After the court decided that Elizabeth Sully lacked the capacity to testify in person, the admissibility of the videotaped deposition was put at issue. Dr. Christine Martone, director of the Behavior Clinic of Allegheny County, testified that her personal examination of Elizabeth Sully nearly a year after the deposition revealed organic brain syndrome with dementia. Dr. Martone stated that the witness was not competent to testify at trial. In addition, and to the point raised here, Dr. Martone testified that her own review of the videotape led her to believe that Miss Sully was competent during the deposition. (R.R., pp. 129–130.)

Defense psychiatrist, Dr. Alexander Levy, however, found that the same mental factors which led to the witness's disqualification for testimony at trial were also present in the videotape. (R.R., pp. 188–191.) He concluded that the videotape portrayed the fact that Miss Sully's mental deficiency was in evidence at that time.

Following this testimony, the defense raised the issue of the prosecution's failure to reveal the existence of the Orphans' Court proceedings in Elizabeth Sully's case. The following record is pertinent here.

1. The deposition begins at p. 22 of the Reproduced Record.

THE COURT: Second question is as to whether or not the deposition should not be admitted because you were not aware of the fact of the prior adjudication.

MR. ZIMMERMAN: That's correct.

MR. DOHERTY: Also she may not have been competent at the time of the deposition.

\*     \*     \*     \*     \*     \*

MR. ZIMMERMAN: I think United States v. Brady cover (sic) the second part of the argument. I mean, that was information that was—could have been exculpatory. Was exculpatory to the Defendants. It was known or it was in the possession of the knowledge of the Commonwealth. We were not provided with it, and I think—

THE COURT: Exculpatory?

MR. ZIMMERMAN: Absolutely exculpatory.

THE COURT: It doesn't go to the merits of the claim. Merely goes to the availability of the witness.

\*     \*     \*     \*     \*     \*

MR. ZIMMERMAN: Yes. But you see Brady has a two-pronged test. One is to guilt. One is to mitigation. When we are talking about Brady, if the government doesn't give us the information prior to trial, and we find out about it later, you can't make the claim, well, even though you may have had it, it might not have been good because nobody knows. I mean, you can't decide that posthaste so to speak.

\*     \*     \*     \*     \*     \*

MR. ZIMMERMAN: Or ask different questions.

MR. DOHERTY: Your Honor, may I go one step further. That is, if you remember Mr. Levy's testimony, Mr. Levy said, obviously, the deposition was not a clinical evaluation nor was there a clinical question and answer. I think what Mr. Zimmerman says has validity in so far as whether you look at it from a Brady point of view or a due process point of view or effective assistance of counsel because if we know that, we are able to formulate questions which could aid the later determination.

THE COURT: Not to get hung up on the semantics of whether it is exculpatory or not, there is a question as to whether or not it should have been made available. Mr. Ahwesh.

MR. AHWESH: To answer them in reverse order, perhaps.

The complaint was filed on these particular matters on November 30, 1987. The videotape deposition was not taken until October 26 of 1988. At that time, if I understand the facts correctly, Miss Sully had not—Elizabeth Sully—had not been adjudicated incompetent by Judge Eunice Ross.

\* \* \* \* \* \*

THE COURT: I have a copy of Judge Ross' order. I have to double check on that. Go ahead.

MR. AHWESH: In any case, Your Honor, the Commonwealth had no knowledge of this matter. We didn't know about it. Therefore, whether it is exculpatory or not, we did not have it. We didn't know.

(R.R., pp. 241–246).

The basis of the defense's allegation is a police affidavit for issuance of process in the Sully crimes. (A copy of this affidavit is found beginning at R.R., p. 291.) According to Attorney Robert Medonis, a copy of the affidavit of the crime was transmitted to him in the Orphans' Court by the office of the District Attorney. Medonis was conducting the competency examination of Elizabeth Sully in Orphans' Court. At the very least, it appears that someone in the District Attorney's office certainly was aware of those proceedings, and the affidavit was given to Attorney Medonis prior to the videotaped deposition. The existence of the affidavit was bared in a statement by Attorney Medonis at the competency hearing held on October 19, 1988, one week before the deposition of Elizabeth Sully. Attorney Medonis used the existence of the crime to demonstrate that Miss Sully could not manage her own affairs.[2]

---

**2.** A copy of the Orphans' Court proceedings begins at R.R., p. 284. The statement of Mr. Medonis appears on pp. 288–289: "a copy of an

The record reveals that three different prosecutors were assigned to this case at different times: Anthony Bittner, Esq., Leo Dillon, Esq. and finally Michael M. Ahwesh, Esq. Without explanation, the trial judge determined that Leo Dillon was not aware of the proceedings of the Orphans' Court. (R.R., pp. 112–113.) Dillon represented the Commonwealth at the videotaped deposition of Elizabeth Sully.

Beyond these facts, however, the record offers nothing more on the question of prior knowledge by the prosecution. Because this was a pivotal issue in the trial proceedings, we note that a hearing was not held to make a factual determination on the record. Attorney Medonis was never called to explain who gave him the police affidavit. Nor were prosecutors Bittner and Dillon questioned. The trial court just proceeded to determine that a review of the videotape by Dr. Martone proved in itself that Elizabeth Sully was not incompetent to testify at that time. (Slip opinion, pp. 4–5.) The Superior Court affirmed. (Slip opinion, p. 5.) Both courts concluded as well that Appellant's counsel could not complain after agreeing to the deposition while retaining the right to challenge Miss Sully's capacity later.

Such conclusions are unsatisfactory. Surely the entire defense approach to the videotaped deposition could have been altered with knowledge of the hearing in Orphans' Court. Indeed, it can be surmised reasonably that, with such knowledge, the defense could have insisted on waiting beyond the one week that it took for the Orphans' Court to adjudicate Elizabeth Sully incompetent and then have confronted the court with that decision going into the deposition.[3] Clearly, Elizabeth Sully's testimony also was material.

affidavit I received from the District Attorney's office." The proceedings in the Orphans' Court before the Honorable Eunice Ross commenced before the videotaped deposition was taken. Judge Ross adjudicated Elizabeth Sully to be incompetent in December, 1988, after the date of the deposition.

3. The trial judge did observe that competency for purposes of the Orphans' Court "is far different" from competency to testify. (R.R., p. 240.) Had an evidentiary hearing been held, the court would have

It is essential to a proper review of this case, therefore, that the question of whether the prosecution knowingly withheld knowledge of the proceedings in Orphans' Court be answered. The prosecutor at trial protested that his office lacked such notice, while the testimony of Attorney Medonis in Orphans' Court provides a strong inference that the District Attorney's office gave him the police affidavit. The record so far is not dispositive. The appellant raises the allegation that the Office of the District Attorney had such knowledge, and that the failure to divulge the information triggered *Brady*. Before the *Brady* issue can be addressed, it is imperative to determine whether the prosecution possessed the information in the first place and knowingly withheld same from defendant.

Accordingly, the case is remanded for an evidentiary hearing on this issue.

MONTEMURO, J., is sitting by designation.

been able to apply this to the issue of whether Elizabeth Sully could testify at the videotaped deposition.