## Commonwealth v. Barnes

*J. Patrick Hickey,* for Commonwealth.
*Richard H. Maurer,* for defendant.

SMITH, *J.,* February 24, 1995—On January 12, 1994, a person identifying himself as James M. Barnes was apprehended in the Sears store at the Berkshire Mall in Wyomissing, Berks County, Pennsylvania. He was caught taking four telephones valued at $319.96. As the subsequent procedural history in this case is of importance, this court will recite it in detail.[1]

---

1. In the interests of clarity it should be noted that the charges filed on January 12 and January 31, 1994, will be listed by events in a chronological order to simplify an understanding of the issues in these cases evolving around a question of "double jeopardy,"

1994—Retail Theft; Case "A"; 244/94; Assigned to Judge Jeffrey K. Sprecher: 1/12 Complaint filed; 2/17 Information filed; 3/17 Guilty plea hearing scheduled; 3/28 (a) Date scheduled for guilty plea and sentence, (b) Case transferred from Judge Jeffrey K. Sprecher to Judge Calvin E. Smith, (c) Plea and sentence not entered. Order submitted and signed by Michael Bound and counsel to schedule new trial date, (D) Case now scheduled for trial on 6/15; 4/21 Jury selection rescheduled to 8/23; 6/15 Trial originally set for this date on 3/28 rescheduled to 8/23.

On the same day that the theft offenses occurred, a criminal complaint was filed before John F. Dougherty, District Justice, and defendant was charged with one count of retail theft[2] and one count of receiving stolen property[3] (for simplification we will refer to this set of charges as case "A").

On January 31, 1994, a "probable cause for warrant of arrest" was filed by the Wyomissing Borough Police Department. The document stated, inter alia, that:

"The police arrested a defendant on 1/12/94;

"The party supplied his name as 'James M. Barnes;'

"The party signed his name on the Fingerprint I.D. Card as 'James M. Barnes;'

"The police officer learned from State Police Officer Greg Polinsky that the individual was in fact 'James Michael Bound.' "

As a result of the aforesaid, a criminal complaint was filed on January 31, 1994, charging defendant with unsworn falsification to authorities[4] (for simplification we will refer to this set of charges as case "B").

On February 17, 1994, the Commonwealth filed an information to docket no. 244/94, which set forth the theft and receiving stolen property charges for case "A." On March 17, 1994, the case "A" theft charges were scheduled for a status check. The status hearing was scheduled before the Honorable Jeffrey K. Sprecher, the judge who was currently assigned to all retail theft

---

1994—Unsworn Falsification; Case "B"; 557/94; Assigned to Judge Scott D. Keller: 1/31 Complaint filed; 3/17 Information filed; 4/4 Trial—jury scheduled for 6/16/94; 6/15 Guilty plea accepted rather than trial; 7/5 Sentence entered; 7/25 Hearing to vacate sentence.

2. 18 Pa.C.S. §3929(a)(1).

3. 18 Pa.C.S. §3925(a).

4. 18 Pa.C.S. §4904(a)(1).

cases as per court administration procedure.[5] Assistant Public Defender, Theresa M. Loder, who had entered her appearance on February 18, 1994, for defendant represented him at the status hearing. As a result of the hearing held on March 17, 1994, defendant's counsel executed an order which was countersigned by the court. The order directed defendant to return on March 28, 1994, at 11:15 a.m., in courtroom 4B of the Berks County Services Center for guilty plea and sentencing.

Meanwhile, on the same date of March 17, 1994, an information was filed in case "B." On March 21, 1994, Assistant Public Defender, John F. Gainer, entered his appearance for defendant for the falsification charges. Defendant was arraigned before the Honorable Scott D. Keller who was automatically assigned the case as per court procedure.

By date of March 21, 1994, an order was filed with the Prothonotary of Berks County to no. 1522-94 AD. The order signed by President Judge Forrest G. Schaeffer, ordered that all prior orders making judicial assignments "... are revoked ... and following assignments ... made." The order was effective as of Monday, March 28, 1994.

Court administration notified personnel of the reassignments as follows:

"Effective March 28, 1994, Judges Sprecher and Smith switched caseloads. Judge Sprecher will now

---

5. The procedure utilized for the assignment of criminal cases to judges in the criminal division, as administered by court administration, works as follows: Each judge is assigned criminal cases originating with specific district justice judicial districts; the method was designed to prevent judge shopping. An exception to this procedure is that all DUI cases and retail theft cases originating with all district justices are assigned to a specific criminal division judge.

handle all cases previously assigned to Judge Smith. Judge Smith will now handle the DUI and retail theft caseload previously assigned to Judge Sprecher."

The case at hand was just one case of 2,000 cases, more or less, reassigned. The transition was implemented in less than four work days. Court staff, assistant district attorney assignments and public defenders assignments were significantly transformed.[6] Work assignment, production and procedures were impacted.

In specific reference to case "A," defendant and his counsel chose to alter the guilty plea and sentencing order scheduled for March 28, 1994, and requested instead that the case be rescheduled for trial on June 15, 1994. This was followed by the assignment of a new assistant public defender on May 17, 1994, and by the withdrawal of the appearance of the previously assigned public defender. On April 21, 1994, the jury selection and trial for case "A," which was scheduled for June 15, was rescheduled to August 23, 1994.

Meanwhile, on June 15, 1994, before the Honorable Scott D. Keller, the Commonwealth accepted a plea bargain in case "B."[7] Representing defendant at this

---

6. Individual district attorneys are assigned by the district attorney to certain courtrooms where specific criminal division judges serve. About 80 percent of all criminal cases are handled by the public defenders' office. The chief public defender makes the assignments of staff members to specific courtrooms where specific criminal division judges sit. In practice, staff assigned to each courtroom develop specialties in the type of cases dealt with in each courtroom. Case assignments to assistant district attorneys and assistant public defenders are dictated by courtroom assignments rather than by individual case assignments.

7. The terms of the plea bargain, which are of importance in this case and a matter of dispute between the parties, will be discussed in depth later in this opinion.

hearing was John Elder, Esquire, Assistant Public Defender.[8] The Commonwealth was represented by Richard P. Reynolds, Esquire, First Assistant District Attorney. On July 5, the Honorable Scott D. Keller, pursuant to the negotiated plea agreement, entered sentence on the unsworn falsification charge.

On July 11, 1994, Richard H. Maurer, Assistant Public Defender, filed a motion for dismissal on double jeopardy grounds the theft charges filed to docket no. 244/94. Mr. Maurer had entered his appearance on May 17, 1994, to represent defendant in case "A."

The Commonwealth filed a motion to vacate defendant's sentence for unsworn falsification on July 14, 1994. On July 25, 1994, after a hearing was held, the Honorable Scott D. Keller denied the Commonwealth's motion. Two days later, the Commonwealth filed a memorandum of law in opposition to defendant's motion for dismissal of case "A."

Despite the obfuscated nature of the proceedings in this case, the issue in this case is relatively clear. The issue as presented by defendant is whether defendant's successive prosecution on the charges of unsworn falsification to authorities in case "B" and theft offenses in case "A," violates the Compulsory Joinder Rule of 18 Pa.C.S. §110.

Initially, this court must make a distinction as to defendant's motion. Defendant's motion to dismiss the theft charges is entitled "motion to dismiss on double jeopardy grounds." However, defendant's motion does not frame itself within a federal constitutional double jeopardy analysis, rather defendant bases his claim en-

---

8. It should be noted for procedural purposes that at no time did Mr. Elder enter a formal appearance in this case.

tirely on the Compulsory Joinder Rule of 18 Pa.C.S. §110.

The Pennsylvania Supreme Court formulated the Rule of Compulsory Joinder in the mid-1970s in two cases. *Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974), *cert. denied,* 417 U.S. 969 (1974) *("Campana II"); Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432 (1973), *vacated and remanded,* 414 U.S. 808 (1973) *("Campana I").* The holdings in the *Campana* decisions are founded on the prohibition against double jeopardy found in Article I Section 10 of the Pennsylvania Constitution,[9] which in turn is based on the Fifth Amendment of the Federal Constitution.[10] The *Campana* decisions were later codified by the legislature in 18 Pa.C.S. §110.

While many of the same policies underlie the constitutional and statutory provisions, they are not identical. In some ways section 110 "offers broader protection against a successive prosecution than does double jeopardy." *Commonwealth v. Bellezza,* 412 Pa. Super. 469, 481, 603 A.2d 1031, 1038 (1992).[11] Therefore, although defendant has entitled his filing "motion to dismiss on double jeopardy grounds," the substantive provisions of the motion exclusively seek the protection afforded under section 110. This court will therefore

---

9. "No person shall, for the same offense, be twice put in jeopardy of life or limb. ..." Pennsylvania Constitution Article I Section 10.

10. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. ..." U.S. Constitution Amendment V.

11. As the court in *Bellezza* goes on to note, double jeopardy bars successive prosecutions for "the same offense" while section 110 extends protection to the "same criminal episode." *Id.*

confine its opinion strictly to an analysis and discussion of section 110.[12]

Section 110 provides in pertinent part:

*"When prosecution barred by former prosecution for different offense:*

"Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

"(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

"(i) any offense of which the defendant could have been convicted on the first prosecution;

"(ii) *any offense based on the same conduct arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court*

---

12. However, if this court were to resolve the double jeopardy issue pursuant to the U.S. Constitution, this court finds that defendant fails to pass the two-pronged test as articulated in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). The theft and the unsworn falsification charges in this case contain separate and distinct statutory elements from one another. Therefore, the first prong of the *Grady* test is not violated. As to the second prong, there is nothing in the record to suggest that the Commonwealth, to establish essential elements of the theft offenses, will prove conduct that constitutes an offense for which the defendant has already been prosecuted, here the unsworn falsification charge. *Grady, supra* 495 U.S. at 520-21, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. In applying the *Grady* test to the instant case, it is immediately clear that double jeopardy does not bar the theft prosecutions.

*ordered a separate trial of the charge of such offense; ... "* 18 Pa.C.S. §110(l). (emphasis added)

In short, section 110 bars a subsequent prosecution for violation of a second different statutory provision, if the defendant has already been either acquitted or convicted of another offense which arose from the same criminal episode.

Therefore, this court must apply the following analysis to the case at bar: (1) First, whether the former prosecution for unsworn falsification resulted in an acquittal or conviction; (2) whether the instant prosecution for theft was based upon the same conduct or arose from the same criminal episode as the unsworn falsification charges; (3) whether the Commonwealth was aware of the case "A" prosecution before the case "B" prosecution concluded; and finally, (4) whether the instant and former prosecution were within the jurisdiction of a single court. See *Commonwealth v. McPhail,* 429 Pa. Super. 103, 109, 631 A.2d 1305, 1308-09 (1993).

Application of these factors reveals that defendant's successive prosecution for unsworn falsification and theft offenses, found at case nos. 557/94 and 244/94 respectively, satisfy the four-part inquiry set forth in *McPhail.*

First, a guilty plea constitutes a conviction for the purposes of precluding further prosecution, pursuant to 10 Pa.C.S. §110. *Id.* at 110, 631 A.2d at 1309. On June 15, 1994, defendant's plea of guilty to the charge of one count of unsworn falsification to authorities, docket no. 557/94, was accepted by the Honorable Scott D. Keller, Berks County Court of Common Pleas. On July 5, 1994, defendant was sentenced by Judge Keller to 155 days to 24 months confinement, with credit for 155 days time served. Therefore, for purposes of 18 Pa.C.S. §110(1)(ii), defendant's plea of guilty to

the former prosecution for unsworn falsification resulted in a "conviction."

Second, it is uncontested here that defendant's pending prosecution on charges for retail theft and receiving stolen property arise from the same criminal episode as the charge of unsworn falsification.[13] Moreover, in *Commonwealth v. Edwards,* 264 Pa. Super. 223, 399 A.2d 747 (1979), the court was faced with an almost identical fact pattern.

In *Edwards* the defendant was arrested by police for theft. The defendant also repeatedly gave false identifications of himself to the police. Due to his attempts to mislead the police, the defendant was separately charged with unsworn falsification to authorities. The defendant then pled guilty to the unsworn falsification charge. Subsequent to the guilty plea, the defendant was tried for the theft offenses. The jury could not reach a verdict and a mistrial was declared. The trial court then set down a new date for trial, and the defendant's double jeopardy appeal ensued.

The Superior Court held that the defendant's prosecution for theft was barred by section 110. In reaching its decision the court held that the charge for unsworn falsification arose out of the same criminal episode as the theft offenses. The court stated:

"While it cannot be precisely said that appellant's unsworn falsifications resulted from his attempt to secure the benefit of the theft offenses ... or conceal its commission, it certainly was an effort to avoid prosecution for the offenses, much as resisting arrest would

---

13. See "memorandum of law in opposition to petitioner's motion to dismiss on double jeopardy grounds," p. 8 (stating that "[t]he Commonwealth never disputed the fact that both of petitioner's charges arise from the same criminal episode").

be. ... Thus, the Commonwealth erred in not moving to consolidate the unsworn falsification offense with the theft and conspiracy offenses for trial." *Id.* at 228-29, 399 A.2d at 750.

In the case at bar, the unsworn falsification charge arose from the theft charges in a manner identical to that in the *Edwards* decision. Therefore, this court finds that the prosecution for theft was based upon the same conduct or arose from the same criminal episode as the unsworn falsification charge.

The third element in a section 110 analysis requires this court to determine whether the Commonwealth was aware of the instant prosecution before the former prosecution concluded. Again, this element is not in contention. The Commonwealth in its petition makes it clear that it was aware of both sets of charges prior to defendant entering his guilty plea in case "B." Moreover, the law imputes the knowledge of one member of the prosecutor's office to the office of the district attorney as an entity. See *Commonwealth v. Wallace,* 500 Pa. 270, 276, 455 A.2d 1187, 1190 (1983). Therefore, this court has determined that the Commonwealth was advised of the instant prosecution before defendant entered his guilty plea to the unsworn falsification charge.

Finally, this court must decide whether the instant and former prosecution were within the jurisdiction of a single court. It is a fundamental principle of the law that "the court has no jurisdiction [over] the offense unless it occurred within the county of trial." *Commonwealth v. McPhail, supra* at 113, 631 A.2d at 1311. (citations omitted) The two criminal complaints in this case allege that the theft and unsworn falsification offenses occurred at the Sears Department Store in Wyomissing, Berks County, Pennsylvania. Since the

offenses took place in the county over which this court has exclusive jurisdiction for trial purposes, the fourth element of the analysis is also met.

In summary, this court has made the following determinations: First, the former prosecution for unsworn falsification resulted in an acquittal or conviction; second, the instant prosecution for theft was based upon the same conduct or arose from the same criminal episode as the unsworn falsification charges; third, the Commonwealth was aware of the instant prosecution before the former prosecution concluded; and, finally, the instant and former prosecution were within the jurisdiction of a single court.

Defendant argues that since all four statutory preconditions have been met in this case the prosecution for the theft offenses is barred by the Compulsory Joinder Rule. The Commonwealth argues, however, that defendant in this case is attempting to utilize the Compulsory Joinder Rule as a "procedural expedient to avoid a prosecution," *Commonwealth v. Bartley,* 262 Pa. Super. 390, 396, 396 A.2d 810, 813 (1979), and therefore, this court should not apply section 110 to the case at bar.

The Commonwealth maintains that defendant pled guilty to the unsworn falsification charge solely to avoid prosecution for the retail theft charge. Specifically, the Commonwealth in its memorandum states that it was "prepared to bring all charges in one prosecution and relied on defense counsel's *representation* that petitioner would plead guilty to the retail theft charge before the sentencing hearing for the unsworn falsification charge." Commonwealth's memorandum in opposition, p. 6. (emphasis added) Moreover, the Commonwealth alleges that once the petitioner "voluntarily chose to sever the proceedings by pleading guilty to the unsworn

falsification charge and not guilty to the retail theft charge requesting instead a trial date, his case became controlled by the *Bartley* and *Tarver, [infra],* decisions." *Id.* at 9-10. However, after reviewing the decisions cited by the Commonwealth, as well as the record in this case, it is this court's conclusion that the Commonwealth's reliance on both is misplaced.

The facts in *Commonwealth v. Tarver,* 467 Pa. 401, 357 A.2d 539 (1976), are as follows: The appellant was indicted for murder on December 12, 1968; he was later indicted on February 3, 1969, for other offenses; on May 2, 1969, the appellant was arraigned on all the charges; one month later he changed his guilty plea as to the murder charge from not guilty to guilty; on December 12, 1969, appellant was rearraigned on the remaining charges, as to which he pled not guilty. Appellant was convicted on a number of charges. In his appeal appellant argued that the Compulsory Joinder Rule should have barred any further prosecutions after he had entered his guilty plea. The Pennsylvania Supreme Court in its opinion disagreed. The court held:

"It is sufficient to point out that it was appellant's change of his plea from not guilty to guilty as to the murder charge which necessitated that there be two separate proceedings. ... Thus, we have here a situation where the separateness of the trials for the different offenses was brought about by the defendant himself through his different pleas in the two sets of charges. It *was by his choice, not that of the state, that two separate proceedings were had to determine his guilt or innocence in charges arising [out of] the same criminal episode. In these circumstances there is no reason in logic or policy that should prevent separate dis-*

*positions.* " *Id.* at 408-09, 357 A.2d at 543. (emphasis added)

Similarly, in *Commonwealth v. Bartley,* 262 Pa. Super. 390, 396 A.2d 810 (1979), the court held that separate prosecutions were not barred where the defendant caused charges to be separated by pleading guilty to one charge and demanding a jury trial on the other. In *Bartley, all* of the charges were lodged against the appellant *at the same time* and *in a single complaint,* and *a hearing* was held on all charges on a *single date.* The key factual sequence of events present in both the *Bartley* and *Tarver* decisions are not present in the case at bar.

In both *Bartley* and *Tarver* the court was presented with a factual situation where the appellant was charged at the same time and within the same complaint with multiple offenses. The defendants then entered two conflicting pleas which caused the cases to be separated into two proceedings. In essence, the court in both cases determined that since the separation of the cases was due solely to the appellant's action, section 110's bar to subsequent prosecutions was inappropriate.

Conversely, here, it was by the Commonwealth's initiative that two separate proceedings were filed to determine the defendant's guilt or innocence. Two separate informations were filed. Further, the charges were assigned to two separate judges. Understandably, the initial divergent nature of the proceedings was due to the different times at which the complaints were filed. However, after this initial period, both the Commonwealth and defendant had ample opportunities to consolidate these charges.[14] Neither party in this case availed them-

---

14. Pa.R.C.P. 1127 entitled "joinder-trial of separate indictments or informations" provides, inter alia:

selves of this procedural solution. The offenses in this case were severed to begin with, and remained severed despite a means of merging them. Therefore, the factual situation present in *Bartley* and *Tarver* is not present here, and accordingly the holding of those cases does not apply.

The Commonwealth further argues that it was prepared to bring all charges in a single prosecution but purportedly did not do so in reliance upon defense counsels's representation that defendant would plead guilty to the retail theft charge. On June 25, 1994, a hearing was held before the Honorable Scott D. Keller pursuant to a motion filed by the Commonwealth to have defendant's sentence for the unsworn falsification charges vacated. The record of that hearing reads, in part, as follows:

"[Mr. Elder, (defense attorney)]: Your honor, my plea bargain was worked out with [Assistant District Attorney] Carol Daringer, it was worked out the day before

---

"*A. Standards.*

"(1) Offenses charged in separate indictments or informations may be tried together if:

"(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

"(b) the offenses charged are based on the same act or transaction.

"*B. Procedure.*

"(1) Written notice that offenses or defendants charged in separate indictments or informations will be tried together shall be served on the defendant at or before arraignment. A copy of the notice shall be filed with the clerk of courts.

"(2) When notice has not been given under paragraph B(1), *any party may move to consolidate* for trial separate indictments or informations, which motion must ordinarily be included in the omnibus pretrial motion." Pa.R.C.P. 1127. (emphasis added)

trial was scheduled in this case. The plea bargain worked out with her was time served to 24 months, all right. I asked that the sentence be deferred under section 1402 to give the defendant an opportunity to work out a deal in the other case in the other courtroom prior to sentencing in this case. That did not work out. It was not an offer and an acceptance made, it was not a deal made in the other case.

"I'd like to point out a couple of things to you about this case. Number one, at the time either of the informations in these cases were filed, they were not requested to be consolidated. Okay. At the time that I took the plea in this case, June 15, it was scheduled to go to trial the next day. I'd also like you to take judicial notice of the fact that in the other case, no. 244/94, that in April it was scheduled to go to trial on August 23.

"Also I'd like to point out that on the day of sentencing, July 5, did the Commonwealth come forth and object to the sentencing in this case? No, they did not. They went right along with the sentencing.

"I did absolutely nothing wrong in this case, your honor, and there's absolutely no reason why this sentence should be vacated.

"The Court: Mr. Reynolds, it seems to me that the only way I would vacate the sentence is if you had a definite agreement between you or Ms. Daringer and Mr. Elder that encompassed an open plea to the other charge. And if there was no such definite agreement— buyer beware—you took your deal on this one.

"[Mr. Reynolds (for the Commonwealth)]: I cannot say I had an ironclad deal that the other case would

be an open plea or any other kind of specific sentence. I knew at the time I took this plea that the possibility of getting jammed in exactly the same fashion that I did get jammed in existed. I would not have taken this guilty plea, I was in front of your court for some other unrelated reason, and it was a huge emergency that this case go today. To accommodate the defense, I did exactly that with the understanding that [the] guilty plea would be forthcoming.

"The Court: But also, and the point Mr. Elder makes is then we went through sentencing and there's not a peep made from the Commonwealth to say, wait a second, Judge, I think—and that's the only way and since you have said that you can't represent that to me—" N.T. 7/25/94 at 5-7.

In the above discussion, the Commonwealth's plea discussion with defendant's counsel contained no condition that defendant would plead guilty to the theft offenses. This court's determination of the facts is based strictly upon what appears on the record. The only reference made during the guilty plea colloquy regarding any type of settlement was that Mr. Elder was going to attempt to "make a deal" in the theft prosecutions.[15] This does not constitute a promise to plead guilty to the theft charges. The Commonwealth accepted the terms of the plea agreement as set forth in the record. As such defendant is held only to those stated terms. The fact that the agreement did not encompass any other mutual understandings is immaterial.

The Rule of Compulsory Joinder is intended to: "[1] [P]rotect the accused from governmental harassment

---

15. N.T. 6/15/94 at 2.

and also; [2] as a matter of judicial administration and economy, to ensure finality without unduly burdening the judicial process by repetitious litigation." *Commonwealth v. McPhail,* 429 Pa. Super. 103, 109, 631 A.2d 1305, 1308 (1993). (citations omitted) The failure of the parties to consolidate these two matters resulted in repetitious and unnecessary litigation. The resulting waste of judicial resources is the exact consequence the Rule of Compulsory Joinder was created to protect against. However, it is this court's opinion that the decision reached in this case is the result of a rare set of circumstances that ought not be repeated.

In conclusion, it is this court's determination that defendant has met all the statutory conditions set forth under the *McPhail* decision. Therefore, stare decisis will control and pursuant to the holding in that decision, defendant's subsequent prosecution for retail theft and receiving stolen property set forth under docket no. 244/94, is barred by 18 Pa.C.S. §110. Moreover, this case is almost indistinguishable from *Commonwealth v. Edwards, supra,* which reached the same decision.

Wherefore, upon careful consideration of the foregoing facts and controlling law, this court now enters the following order:

## ORDER

And now, to wit, February 24, 1995, this court after hearings held and after a careful review of both the record and of the controlling law, hereby orders and decrees that defendant's prosecution for retail theft and receiving stolen property, docketed at 0244/94, is barred as a violation of the compulsory joinder rule, 18 Pa.C.S. §110.