J-A29011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ANDREW DAVID MILLER | : | |
| Appellant | : | No. 1346 WDA 2020 |

Appeal from the PCRA Order Entered December 3, 2020
In the Court of Common Pleas of Venango County Criminal Division at
No(s):  CP-61-CR-0000710-2005

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED: DECEMBER 22, 2021**

Appellant, Andrew David Miller, appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

During Appellant's direct appeal, this Court summarized the facts adduced at Appellant's 2006 jury trial as follows:

> The victim, B.M., testified that on August 29, 2005, she was sleeping on the floor of the living room in the home of Susan O'Laughlin [("O'Laughlin")], B.M.'s guardian.  B.M. testified that while she was sleeping that night, Appellant, … O'Laughlin's live-in boyfriend, directly placed his penis in her vaginal orifice, with skin-to-skin contact.  N.T., 4/13/06, at 119-[]20.  B.M. stated that she woke up to Appellant's touch because it hurt.  *Id.*  After realizing she was awake, Appellant acted like he was sleeping, after which B.M. got up and moved onto a couch in the room.  *Id.* at 121, 123.  B.M. also testified that on the next night, August 30, 2005, Appellant again touched her while she was sleeping, this time placing his finger in her vagina.  *Id.* at 130.  When B.M.

_____

[*] Retired Senior Judge assigned to the Superior Court.

awoke, Appellant feigned sleep and she again moved onto the couch. *Id.* at 131-32. After the second incident, B.M. informed … O'Laughlin about Appellant's actions, and … O'Laughlin contacted the police. *Id.* at 132. At the time, B.M. was thirteen years old[,] and Appellant was eighteen years of age. *Id.* at 4, 6.

*Commonwealth v. Miller*, No. 1509 WDA 2006, unpublished memorandum at 1-2 (Pa. Super. filed June 25, 2007). Pertinent to this appeal, O'Laughlin "testified during the trial that she had no knowledge as to whether [Appellant] and the victim had any sort of sexual encounter. O'Laughlin also testified that she, herself, had been sexually assaulted by [Appellant] on a previous occasion." PCRA Court Opinion ("PCO"), 2/17/21, at 1.

> On April 13, 2006, a jury convicted [Appellant] of attempted statutory sexual assault,[1] aggravated indecent assault of a person less than 16 years of age,[2] endangering the welfare of children,[3] and corruption of minors.[4] The [trial c]ourt sentenced [Appellant] on August 4, 2006[;][1] [Appellant] timely appealed, and the Superior Court ultimately affirmed [Appellant]'s conviction…. On November 21, 2007, [Appellant] timely filed his … PCRA Petition[]. On November 27, 2007, the [PCRA c]ourt appointed William J. Cisek, Esq. to represent [Appellant]. In the same Order, the [c]ourt directed Attorney Cisek to file an amended PCRA petition by December 27, 2007[,] or—if transcripts were necessary to prepare an amended petition—to file a request for transcripts by December 17, 2007.
>
> [1] 18 Pa.C.S. §§ 901, 3122.1.
> [2] 18 Pa.C.S. § 3125(a)(8).
> [3] 18 Pa.C.S. § 4304(a).
> [4] 18 Pa.C.S. § 6301(a)(1).
>
> On August 1, 2008, the [c]ourt conducted a status conference in this matter. In a bench order issued on that date, the [c]ourt noted that Attorney Cisek had obtained transcripts on July 31, 2008, and that he "ha[d] been communicating with his client." The [c]ourt directed the Court Administrator to schedule another

---

[1] The court sentenced Appellant to an aggregate term of 144 to 288 months' incarceration, to be followed by 60 months' probation.

status conference four months later, and further indicated that it anticipated that Attorney Cisek would file either a request for hearing or provide some indication that a [**Turner**/**Finley**[2]] no[-]merit letter would be forthcoming prior to the next status conference.

On December 30, 2008, the [PCRA c]ourt conducted a second status conference. Following that conference, the [c]ourt issued an order directing Attorney Cisek to file a [**Turner**/]**Finley** letter within 30 days. This would be the last activity with respect to [Appellant]'s PCRA Petition for nearly seven years.

On December 28, 2015, the Clerk accepted for filing a letter from [Appellant], dated December 21, 2015. In his letter, [Appellant] stated that he had been serving his sentence in Michigan[] during 2010 and 2011 as a result of prison overcrowding[] and had never received notice of any disposition of his PCRA Petition. On or shortly before January 19, 2016, the [PCRA c]ourt received and reviewed [Appellant]'s letter. On January 19, 2016, the [c]ourt issued an order observing that Attorney Cisek remained counsel of record and that nothing had been filed relative to the PCRA Petition since its December 30, 2008 order, and directing Attorney Cisek to review [Appellant]'s letter and promptly file whatever pleading he considered appropriate.

Following the [PCRA c]ourt's January 19, 2016 order, [Appellant] sent another letter, filed January 28, 2016. In his letter, [Appellant] stated as follows: "By court order dated Jan. 19, 2016, I just found out, upon my inquiry into the court, that my original [PCRA petition] ([timely] filed in 2008[]) is still open, 7 yrs. later, due to a lack of due [diligence] and ineffectiveness on my … appointed counsel, William Cisek." Thereafter, [Appellant] filed another letter and a *pro se* amended PCRA Petition on February 4, 2016. [Appellant] filed an additional letter on July 21, 2016, inquiring about the cost of obtaining transcripts.

On September 6, 2017, Attorney Matthew C. Parson entered his appearance in the matter. Attorney Parson's entry of appearance also indicated that Attorney Cisek wished to be removed from this case, and was signed by Attorney Cisek. On June 14, 2019, Attorney Parson filed a motion for hearing. The [PCRA c]ourt scheduled a hearing for February 3, 2020. On January 16, 2020,

_____

[2] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), **and see Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

Attorney Parson filed an amended affidavit from … O'Laughlin, stating that the prosecutor, James Carbone [("Carbone")], had appeared at her home on the day of trial, that she was very ill on that day, … that the prosecutor had pressured her to testify that [Appellant] had an inappropriate relationship with the victim[,] and that [Appellant] had been sexually abusive toward O'Laughlin. On February 3, 2020, Attorney Parson filed a Motion to Amend PCRA Petition, to narrow the matter to three issues: (1) trial counsel was ineffective for failing to file an appeal,[5] (2) trial counsel was ineffective for failing to call witnesses to testify, and (3) that … Carbone had coerced testimony from O'Laughlin.

[5] This issue was ultimately withdrawn at the September 18, 2020 hearing, as trial counsel did pursue a direct appeal.

…

On September 18, 2020, the [PCRA c]ourt conducted a hearing, with [Appellant] present via video conference. [Appellant] was unable to secure the appearance of the two additional witnesses that he wished to present -- Attorney Johnston, [his] trial counsel, and O'Laughlin. [Appellant] testified regarding trial counsel's failure to call two witnesses, indicating that they had been present with [Appellant] at the time of his arrest and could testify as to the events of that day; there is no indication that the witnesses had any testimony bearing directly upon the sexual assault that formed the basis of [Appellant]'s conviction. [Appellant] speculated that their testimony would relate to the circumstances of his arrest, and would potentially have demonstrated that other individuals may have used his arrest as an excuse to steal his money and drugs. When questioned as to how the testimony of these two witnesses would have helped him at trial, he indicated that he did not know. When asked, [Appellant] indicated that his memory of the events had faded due to the passage of approximately 13 years since the time of trial. Attorney Parson also inquired about the delay in the PCRA proceedings. [Appellant] testified that he received "maybe one letter" from Attorney Cisek and that he never spoke directly with Attorney Cisek. After [Appellant] returned from his placement in Michigan, he wrote Attorney Cisek "a few times," but never received a response. [Appellant] testified that his family contacted Attorney Cisek, and that he "said he was going to do some things, but he never did nothing." Near the close of the hearing, Attorney Parson moved to amend the PCRA Petition to add a claim of prejudice due to the passage of time. As

[Appellant] was unable to secure the appearance of his two witnesses, the [c]ourt granted a final continuance to allow [Appellant] time to obtain testimony from Attorney Johnston and O'Laughlin.

On November 30, 2020, the [PCRA c]ourt conducted an additional evidentiary hearing and received testimony from Attorney Johnston and … O'Laughlin. Attorney Johnston did not recall [Appellant] at all and did not remember representing him. O'Laughlin's testimony was largely consistent with the substance of her affidavit. She testified in further detail about the day that … Carbone picked her up from her residence and took her to testify at [Appellant]'s trial, including Carbone's request that she testify that [Appellant] had sexually abused the victim. While O'Laughlin could not recall all the details of her testimony from 2007, she did recall that she testified that she had no knowledge as to whether [Appellant] had any sexual contact with the victim. Regarding O'Laughlin's trial testimony of [Appellant]'s assault against her, O'Laughlin said she could not recall testifying[] that [Appellant] had touched her while she was asleep, against her consent. O'Laughlin stated that she and [Appellant] were dating at the time. When asked whether Carbone told her [to] testify that [Appellant] had assaulted her, she replied that Carbone inquired about the relationship between her and [Appellant], and that he did so in a "forward" manner, but that she could not recall whether he told her to testify to that effect.

PCO at 2-6 (some brackets in original).

Following the November 30, 2020 hearing, the PCRA court denied Appellant's long-delayed PCRA petition. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued its Rule 1925(a) opinion on February 17, 2021. Appellant now presents the following questions for our review:

1. Whether the [PCRA] court erred as a matter of law or abused its discretion, when the court denied [Appellant]'s PCRA petition for a recanting [*sic*] of the witness[']s testimony[, where she] was coerced into admitting that [A]ppellant had assaulted her[?]

2. Whether the [PCRA] court erred as a matter of law or abused its discretion, when the court denied [Appellant]'s PCRA petition[,] when [his] due process rights were violated under the Un[it]ed States Constitu[t]ion and the Pennsylvania Constitution when [Appellant's] first PCRA counsel failed to file a [PCRA] petition for more than 10 years[,] which caused the inability to find witnesses, trial counsel had no memory, and the recanting witness had no memory since the trial was completed over ten years ago[?]

Appellant's Brief at 5.

Initially, we

review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

To be entitled to PCRA relief, a petitioner must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). Regarding his first claim, Appellant argues that O'Laughlin has recanted her trial testimony, testimony Appellant claims was coerced by Carbone. Thus, Appellant ostensibly seeks relief under Section 9543(a)(2)(i) (providing eligibility for relief for a "violation of the Constitution of this Commonwealth

or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"), and/or under Section 9543(a)(2)(vi) (providing eligibility for relief due to the discovery of "exculpatory evidence" unavailable at the time of trial "that has subsequently become available and would have changed the outcome of the trial if it had been introduced"). Specifically, Appellant argues that he discovered that Carbone engaged in prosecutorial misconduct by coercing O'Laughlin's trial testimony that she had also been sexually assaulted by Appellant. Appellant argues that O'Laughlin's trial testimony prejudiced him because it enabled Carbone to portray Appellant as a serial offender in the eyes of the jury. **See** Appellant's Brief at 12 ("ADA Carbone d[id] this because if he c[ould] prove that the witness was sexually assaulted[,] then of course [A]ppellant [must have] sexually assaulted the victim."). Appellant further argues that:

> In the present case, [O'Laughlin] has no reason to lie now. She has had no contact with [A]ppellant for over 14 years. They are no longer in a relationship. The witness and [A]ppellant are not planning on reuniting. Her testimony of being pressured by ADA Carbone is truthful and well proven by this stage in ADA Carbone's history as a prosecutor.[3] Thus, her testimony that no sexual assault occurred between her and [A]ppellant is sufficient to grant a new trial.

---

[3] Appellant is referring to two prior, unrelated cases where this Court granted relief premised upon Carbone's prosecutorial misconduct. **See Commonwealth v. Culver**, 51 A.3d 866 (Pa. Super. 2012), **and Commonwealth v. Anderson**, 38 A.3d 828 (Pa. Super. 2011).

*Id.* at 14.

Our review of the record shows that O'Laughlin testified at Appellant's 2006 trial that during her relationship with Appellant, O'Laughlin would occasionally "wake up to him trying to have sexual intercourse" with her, and that Appellant would "act like he[ was] sleeping" when she woke up.  N.T. Trial, 4/13/06, at 164-65.  She stated that this occurred "[m]aybe more than ten times."  *Id.* at 167.  In her affidavit dated January 13, 2020 (filed on January 16, 2020), O'Laughlin stated that, prior to her trial testimony, Carbone told her "to testify that [Appellant] was sexually abusive toward" her.  Amended Affidavit of Susan O'Laughlan [*sic*], 1/16/20, at 1.  In the affidavit, O'Laughlin further stated that Carbone was "coaching" her to "testify in a certain way."  *Id.*

At the PCRA hearing, O'Laughlin testified during direct examination that Carbone picked her up on the day of her trial testimony, despite O'Laughlin's feeling ill and despite repeatedly telling him that she did not know anything about Appellant's sexually assaulting the victim.  N.T. PCRA Hearing, 11/30/20, at 5-6.  She recalled testifying consistently with her lack of knowledge about Appellant's assault of the victim.  *Id.* at 6-7.  She stated that she "just told the truth" when testifying at Appellant's trial. *Id.* at 7.  On cross-examination, O'Laughlin specifically denied that any of her trial testimony "came out of whatever … Mr. Carbone wanted" her to say.  *Id.* at 8.

During re-direct examination, O'Laughlin could not recall testifying that Appellant had touched her without her consent while she was asleep. *Id.* at 9. Notably, O'Laughlin did not repeat the allegation that Carbone had told her to testify that Appellant had sexually abused her, as her affidavit had stated.[4] O'Laughlin was only asked whether she recalled making the accusations during her trial testimony, and she answered that she did not recall that testimony.

The PCRA court determined that Appellant was not entitled to relief on his claim that Carbone had solicited false testimony from O'Laughlin. PCO at 9. The court reasoned that neither O'Laughlin's affidavit nor her testimony at the PCRA hearing presented exculpatory evidence sufficient to cast doubt on the outcome of Appellant's trial, even assuming both that O'Laughlin falsely testified at Appellant's trial, and that Carbone had intentionally solicited that false testimony.[5] *Id.* at 8-9. More specifically, the PCRA found that

> [Appellant] has offered no evidence that would undermine the reliability of the victim's testimony, either by suggesting that the victim's testimony was false or by offering some other evidence that would be incompatible with [Appellant]'s guilt in this matter. While the fact that the prosecutor knowingly procured false testimony is generally exculpatory, ***Commonwealth v. Wallace***, … 455 A.2d 1187, 1190-91 ([Pa.] 1983), the import of such

---

[4] O'Laughlin also did not deny that the sexual assaults had occurred, because she was not asked about the truth of her allegation at all. O'Laughlin also did not deny that they had occurred in her affidavit.

[5] The PCRA court noted that neither assumption was supported by the record, and that it merely made those assumptions for purposes of determining whether the outcome of Appellant's trial would have been different if both allegations were true. *Id.* at 8 n.10.

evidence relates to whether that witness's reliability may be determinative of guilt or innocence, which is simply not the case here.

*Id.* at 9.

We agree that Appellant is not entitled to relief on this claim, but for reasons that differ from the PCRA court.[6] We note that, whether construed as a prosecutorial misconduct claim or a newly-discovered evidence claim, Appellant must demonstrate that his trial was adversely affected by the misconduct and/or the absence of the new evidence to be entitled to relief under the PCRA.[7]

For purposes of the PCRA court's analysis, it assumed that O'Laughlin's trial testimony was false and had been the product of Carbone's misconduct. However, nothing in the record supports the proposition that O'Laughlin's trial testimony was untruthful in any way, regardless of the propriety of Carbone's conduct. At the PCRA hearing, O'Laughlin stated that she testified truthfully at Appellant's trial, despite any pressure applied by Carbone to do otherwise. *See* PCRA Hearing at 5-6. Furthermore, O'Laughlin never refuted her claim

_____

[6] "To the extent our legal reasoning differs from the [PCRA] court's, we note that as an appellate court, we may affirm on any legal basis supported by the certified record." ***Commonwealth v. Williams***, 125 A.3d 425, 433 (Pa. Super. 2015).

[7] To obtain relief under 42 Pa.C.S. § 9543(a)(2)(i), Appellant must show that the prosecutorial misconduct "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." To obtain relief under 42 Pa.C.S. § 9543(a)(2)(vi), Appellant must show that the previously unavailable evidence "would have changed the outcome of the trial if it had been introduced."

- 10 -

at trial that Appellant had sexually assaulted her when they were dating. Indeed, the record fails to demonstrate that O'Laughlin has recanted any portion of her trial testimony at all. Consequently, we conclude that Appellant has failed to produce evidence undermining the reliability of his conviction as is necessary to obtain relief under Section 9543(a)(2)(i), and for the same reasons, that he has failed to show that the outcome of his trial would have been different with the new evidence as is required for him to obtain relief under Section 9543(a)(2)(vi). Accordingly, we conclude that Appellant's first claim lacks merit.

Next, Appellant contends that his due process rights were violated when his prior PCRA counsel abandoned him, effectively leaving his PCRA petition in limbo for more than 10 years. With respect to this claim, there is no dispute that Attorney Cisek utterly failed to provide Appellant with competent counsel after his appointment to steward Appellant's PCRA petition in 2007. As summarized by the PCRA court:

> Here, there is little evidence that Attorney Cisek did anything more than request transcripts and attend two status conferences over the course of approximately 10 years, during which he was [Appellant]'s counsel of record. This is true, despite multiple court orders directing Attorney Cisek to take action in this matter within pr[e]scribed periods. It appears that Attorney Cisek simply abandoned [Appellant]'s matter sometime in 2008 or 2009.

PCO at 11.

Appellant asserted that a due process violation resulted from Attorney Cisek's abandonment in his Rule 1925(b) statement, a claim that he repeats in his statement of the question presented. However, Appellant provides no

- 11 -

due-process analysis in his brief and, instead, presents Attorney Cisek's abandonment as an ineffective assistance of counsel (IAC) claim. ***See*** Appellant's Brief at 14-15 (citing the standard for our review of IAC claims). Consequently, Appellant has waived his due process claim by failing to adequately develop that claim in his brief. ***See Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa. Super. 2015) ( "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119. While this Court may overlook minor defects or omissions in an appellant's brief, we will not act as his or her appellate counsel.") (cleaned up). Furthermore, Appellant has waived his IAC claim by failing to raise it in his Rule 1925(b) statement. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").[8]

Nevertheless, even had Appellant preserved his IAC claim for our review, we would deem it meritless. To establish an IAC claim, a PCRA petitioner must "plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) [the a]ppellant suffered prejudice because of counsel's action or inaction." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 285 (Pa. 2011). Here, there is no dispute with

---

[8] We note that the PCRA court's order instructed Appellant that any issue "not properly included in the statement" would be deemed waived. Order, 12/21/20, at 1.

respect to the first two elements, given the PCRA court's conclusion that Attorney Cisek abandoned Appellant after he was appointed as PCRA counsel.

However, to "establish the third prong, [the a]ppellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Id*. Instantly, the 'proceedings' in question concerned the adjudication of Appellant's PCRA petition. Fortunately, despite Attorney Cisek's abandonment, Appellant's PCRA petition, initially filed in 2007, was never denied while Cisek was Appellant's attorney of record. After Appellant brought Attorney Cisek's abandonment to the PCRA court's attention, the court appointed new counsel, who was then permitted to amend Appellant's still-pending, and still-timely PCRA petition. Following those amendments, the PCRA court conducted hearings to address Appellant's claims before it ultimately denied the petition. For Appellant to be entitled to relief on his IAC claim, he must show that these PCRA proceedings would have reached a different outcome but for Attorney Cisek's abandonment.

Appellant argues that Attorney Cisek's deficient performance directly caused the extraordinary delay in the resolution his PCRA petition, which is undisputed. That delay, he contends, prejudiced him in two ways. First, he claims that because "his trial counsel had no memory" of Appellant, trial counsel

> could not provide testimony on whether … that recantation issue
> mentioned above would have any [e]ffect on the outcome of the
> trial. This is an important issue because the court needs …

- 13 -

evidence that the trial would have resulted in a different outcome. The time frame between the filing of this PCRA petition and the hearing created an[] issue where the evidence was not available when trial counsel cannot even remember the client.

Second, the PCRA court references that [A]ppellant desired two witnesses to testify at the PCRA hearing. These witnesses would have aided in his trial on character evidence and facts. Current counsel could not locate the witnesses. After thirteen years, they could not be located or interviewed. Counsel … and the family of [A]ppellant attempted to find these individuals. It is impossible to state if their testimony would make a difference[,] but Attorney Cisek's ineffectiveness in proceeding with the PCRA petition denied this evidence ever coming to light.

Appellant's Brief at 15-16.

Appellant's initial assertion of prejudice is meritless for the same reason we rejected his first claim: Appellant did not present recantation testimony and, thus, trial counsel's assessment of the effect that the non-existent recantation testimony would have had at trial is irrelevant. Again, O'Laughlin specifically denied that her trial testimony was untruthful. Thus, the record simply does not support a finding of prejudice on this basis.

As to Appellant's second assertion of prejudice, he admits that it is "impossible" to ascertain whether the unfound witnesses could have presented evidence favorable to him, even as he baldly asserts that the witnesses "would have aided in his trial on character evidence and facts." *Id.* at 16. This claim of prejudice is pure speculation, offering only the vaguest theory of how the unfound witnesses might have changed the outcome of the PCRA proceedings. "Claims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary; namely, that there is a reasonable probability that, but for counsel's errors,

the outcome of the proceeding would have been different." **Commonwealth v. Pursell**, 724 A.2d 293, 311 (Pa. 1999).

Accordingly, even had Appellant properly preserved his IAC claim for our review, we would deem it meritless because Appellant cannot establish that Attorney Cisek's abandonment resulted in outcome-determinative prejudice.[9]

Order **affirmed**.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2021

---

[9] Nevertheless, we join the PCRA court in its condemnation of Attorney Cisek's dereliction of duty in the stewardship of Appellant's PCRA petition. **See** PCO at 11 ("While [Appellant] has not demonstrated prejudice due to the 13-year delay, the [c]ourt is troubled by the circumstances surrounding the delay. The record in this case raises serious concerns regarding [his] performance[,] … [including] a clear lack of respect for the[ Pennsylvania Rules of Professional Conduct].").